DECISION
{¶ 1} Relator, S. Rosenthal Co., Inc. ("relator"), has filed an original action in mandamus requesting this court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate its order granting permanent total disability ("PTD") compensation to claimant Richard Jones ("claimant") and order the commission to find that claimant is not entitled to PTD.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be denied. Relator filed objections to the magistrate's decision.
 {¶ 3} First, relator contends the commission erred in granting PTD based on Dr. Berg and Dr. Koppenhoefer's reports. Relator argues that because Dr. Berg attached a 35 percent whole person impairment (for psychological conditions) and Dr. Koppenhoefer attached a ten percent whole person impairment (for orthopedic conditions), the commission could not award PTD, because the impairment was less than 100 percent, without analyzing nonmedical factors. We disagree.
 {¶ 4} The commission must focus on the claimant's functional capacity to work rather than the actual percentage of impairment alone. State ex rel. Quarto Mining Co. v. Foreman (1997),79 Ohio St.3d 78, 85; State ex rel. Koonce v. Indus. Comm. (1994),69 Ohio St.3d 436. Dr. Berg's report provides an analysis of claimant's allowed psychological conditions and the extreme impact those conditions have on claimant's ability to work. Dr. Berg concluded that these conditions render claimant unable to perform sustained remunerative employment. The commission awarded PTD based on medical conditions alone. Therefore, as the magistrate found, the commission was not required to discuss the nonmedical factors. State ex rel. Galion Mfg., Inc. v. Haygood
(1991), 60 Ohio St.3d 38, 40 ("It would serve no practical purpose for the commission to consider nonmedical factors in extreme situations where medical factors alone preclude sustained remunerative employment, since nonmedical factors will not render the claimant any more or less physically able to work").
 {¶ 5} Second, relator contends that Dr. Berg's report is internally inconsistent because he assessed 35 percent whole person impairment but then concludes that relator is unable to work. We disagree. Again, the commission relied on Dr. Berg's report and his analysis of claimant's functional capacity to work rather than the percentage attached to the allowed condition. Therefore, it is not internally inconsistent for Dr. Berg to find a lower percentage of physical impairment but still find an inability to work.
 {¶ 6} Third, relator argues that the commission abused its discretion by relying on Dr. Stoeckel's May 18, 2000 report to determine the date claimant should begin receiving PTD compensation. Relator claims that this report is incompetent evidence because it never concludes that claimant's allowed conditions were permanent or at maximum medical improvement at that time. We disagree. Although Dr. Stoeckel's report does not use the term "permanent" or "maximum medical improvement," it clearly states that claimant is unable to perform any sustained remunerative employment. This report constitutes some evidence supporting the commission's decision to start claimant's PTD on May 18, 2000. State ex rel. Dingus v. Quinn Development Co.
(1994), 70 Ohio St.3d 580 (commission's decision to award PTD from date of second expert's report was not error; report was some evidence supporting the commission's decision). Therefore, the commission did not abuse its discretion in considering this report as competent evidence of the date from which to begin PTD compensation.
 {¶ 7} Relator's fourth argument is equally unpersuasive. Relator attempts to argue that because claimant's temporary total disability ("TTD") benefits ended on January 12, 2000 and PTD was awarded as of May 18, 2000, a gap is created wherein claimant did not seek employment. Relator suggests that this "gap" shows claimant voluntarily abandoned the workforce and the commission abused its discretion by not considering the issue. We disagree. It is the employer's burden to raise the issue of voluntary abandonment before the commission and to produce evidence on that affirmative defense. State ex rel. Newark Group Industries,Inc. v. Indus. Comm., Franklin App. No. 01AP-1081, 2002-Ohio-4851, ¶ 78-79. As the magistrate found, there is no evidence that relator ever raised this issue before the commission and relator presented no evidence suggesting that such voluntary abandonment occurred. Therefore, the commission did not abuse its discretion by failing to consider it.
 {¶ 8} Lastly, relator seeks to have the entire PTD award vacated because the commission erroneously allocated ten percent of the award to claimant's 1990 claim. Relator contends there is no evidence to support this allocation to that claim. However, there was sufficient evidence in the record to support the award of PTD as of May 18, 2000. Therefore, even if the commission erred with respect to the allocation, it was harmless error and relator may seek reallocation.
 {¶ 9} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's findings of fact and conclusions of law. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled; writ denied.
Lazarus, P.J., and Bowman, J., concur.
 MAGISTRATE'S DECISION {¶ 10} Relator, S. Rosenthal Co., Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") compensation to respondent Richard Jones ("claimant") and ordering the commission to find that claimant is not entitled to that compensation.
Findings of Fact:
 {¶ 11} 1. Claimant has sustained three work-related injuries in the course of and arising out of his employment and his claims have been allowed as follows: "90-22502 — torn rotator cuff left shoulder[;] 94-556448 — contusion of ankle, right, abrasion hip and leg, right[; and] 96-605886 lumbar strain, major depressive disorder and pain disorder; aggravation of pre-existing degenerative condition of lumbar spine."
 {¶ 12} 2. Claimant was examined by Roberto Madrigal, Ph.D., who issued a report dated November 29, 1999. In that report, Dr. Madrigal opined that claimant would not be able to return to his former position of employment, but that he "may be able, and is willing, to engage in a sedentary, non-stressful type of work, on a part-time basis only." Dr. Madrigal opined further that claimant had reached maximum medical improvement ("MMI").
 {¶ 13} 3. In a report dated December 20, 1999, Jennifer J. Stoeckel, Ph.D., responded to Dr. Madrigal's report. Dr. Stoeckel opined that claimant had not reached MMI with regard to the allowed psychological conditions, but that he continued to need bi-weekly treatment.
 {¶ 14} 4. In response thereto, Dr. Madrigal issued a second report dated January 12, 2000. Dr. Madrigal stated that claimant still presents with significant psychopathology which impairs him from returning to employment, that his treatment has been appropriate, but that claimant does not appear to be benefiting from further treatment and that further treatment should be for maintenance purposes only.
 {¶ 15} 5. On May 18, 2000, Dr. Stoeckel issued another report wherein she indicated that she concurred with Dr. Madrigal's conclusion that claimant suffers from significant psychopathology that impairs him from any gainful employment. Dr. Stoeckel opined further that claimant continues to remain emotionally very fragile and that he is susceptible to deterioration with even minimal stress. Dr. Stoeckel urged that claimant be permitted to continue his current psychological treatment.
 {¶ 16} 6. On September 14, 2000, claimant filed an application for PTD compensation.
 {¶ 17} 7. Claimant was examined by Ron M. Koppenhoefer, M.D., who performed an independent medical examination. In his report, Dr. Koppenhoefer found no impairment relative to the conditions allowed in the 1990 and 1994 claims. However, Dr. Koppenhoefer found a ten percent whole person impairment due to claimant's 1996 injury. Dr. Koppenhoefer stated further that claimant would be able to perform sedentary and light-duty work and noted that claimant has an allowed psychological condition which was obviously affecting his ability to do work-related activities.
 {¶ 18} 8. Donald J. Brown, M.D., performed an independent psychological examination at the request of the commission. Dr. Brown opined that claimant had reached MMI, and concluded that he had a class III level of impairment and a 45 to 50 percent impairment with regard to his psychological conditions. Dr. Brown stated that claimant's pain disorder would not physically prevent him from returning to work and that it was not work prohibitive; however, he noted that emotionally, it is such a focus of claimant's life that it would constitute a significant functional limitation. Dr. Brown concluded that claimant could return to any of his former positions of employment or any other sustained remunerative employment.
 {¶ 19} 9. Claimant's application was heard before a staff hearing officer ("SHO") on July 3, 2002. The SHO issued an interlocutory order after having found that Dr. Brown's report was internally inconsistent.
 {¶ 20} 10. Thereafter, claimant was examined by Norman L. Berg, Ph.D., who issued a report dated August 19, 2002. Dr. Berg opined that claimant had reached MMI and assessed a 35 percent whole person impairment for his "major depressive disorder" as well as a 35 percent whole person impairment for his allowed condition of "pain disorder." Dr. Berg further opined that claimant's allowed psychological conditions prevented him from returning to his former position of employment as well as performing any sustained remunerative employment. Specifically, Dr. Berg noted that claimant has mild limitation in his ability to understand and follow simple verbal directions; moderately severe limitation in his ability to maintain attention and concentration while doing simple routine tasks; marked limitation in his ability to relate adequately with others in a work setting; marked limitation in his ability to sustain his level of activity in a work setting; and extreme limitation in his ability to cope with routine job stress.
 {¶ 21} 11. Claimant's application was heard before an SHO on November 13, 2002, and resulted in an order granting claimant's application based upon the reports of Drs. Koppenhoefer, Berg and Stoeckel. Based upon the May 18, 2000 report of Dr. Stoeckel, the SHO concluded that claimant's award of PTD compensation would be payable from May 18, 2000 on, the date of Dr. Stoeckel's report. The SHO also concluded that claimant was restricted to sedentary or light-duty work activity pursuant to the report of Dr. Koppenhoefer. The SHO then concluded that claimant was precluded from any gainful employment based upon his allowed psychological conditions. The commission concluded that taking claimant's limitations to sedentary or light-duty work in conjunction with his allowed psychological conditions and the impairment caused from them, claimant was permanently and totally disabled. Ninety percent of the award was ordered paid under the 1996 claim and ten percent of the award was ordered to be paid under the 1990 claim.
 {¶ 22} 12. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 23} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 24} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 25} Relator first challenges the commission's order granting claimant PTD compensation on the basis that Dr. Berg opined that claimant had a 35 percent whole person impairment for each of his allowed psychological conditions and Dr. Koppenhoefer assigned a ten percent whole person impairment for claimant's allowed physical conditions. Relator contends that the commission abused its discretion by granting PTD compensation based upon the medical evidence alone without discussing the non-medical vocational factors. For the reasons that follow, this magistrate disagrees.
 {¶ 26} Relator essentially argues that claimant has a 35 percent psychological impairment and only a ten percent physical impairment. As such, since the doctors did not opine that he had a "100 percent impairment" then claimant must be able to work.
 {¶ 27} Relator's argument ignores the fact that the focus of a PTD determination is on the claimant's functional capacity for work and not simply the percentage of impairment attached to the allowed conditions. In fact, the Ohio Supreme Court has stated that it would be error for the commission to draw its conclusion with regard to PTD compensation on the basis of percentages alone, without regard to a claimant's actual physical restrictions and, if necessary, the claimant's non-medical disability factors. See, e.g., State ex rel. Koonce v. Indus.Comm. (1994), 69 Ohio St.3d 436, and State ex rel. QuartoMining Co. v. Foreman (1997), 79 Ohio St.3d 78.
 {¶ 28} In the present case, Dr. Berg clearly opined that claimant was incapable of performing sustained remunerative employment based upon his allowed psychological conditions alone. The commission did not abuse its discretion in this regard.
 {¶ 29} Relator next contends that the commission abused its discretion by beginning claimant's award of PTD compensation as of May 18, 2000. This start date was based upon the report of Dr. Stoeckel dated May 18, 2000. In that report, although Dr. Stoeckel was not asked to offer an opinion as to claimant's permanent total disability, Dr. Stoeckel specifically opined that claimant's "psychopathology impairs him from any gainful employment." Relator contends that Dr. Stoeckel's report cannot support some evidence because Dr. Stoeckel did not specifically identify the allowed conditions in claimant's claim.
 {¶ 30} "Psychopathology" is defined in Taber's Cyclopedic Medical Dictionary (18 Ed. 1997) 1593, as "[t]he study of the causes and nature of mental disease or abnormal behavior." "Psychopathy" is defined in Taber's as "[a]ny mental disease, esp. one associated with defective character or personality." Id. Clearly, the above terms are generic and simply identify psychological conditions in general and particular mental disease. Furthermore, a review of Dr. Stoeckel's other reports, especially her December 20, 1999 report, which was specifically prepared in response to Dr. Madrigal's original report, indicates that Dr. Stoeckel specifically identified the allowed psychological conditions in claimant's claim and there is no doubt that Dr. Stoeckel was aware of the allowed conditions.
 {¶ 31} Third, relator contends that Dr. Stoeckel's report also cannot be competent evidence because she did not offer any opinion as to impairment. Relator contends that later, in her March 28, 2002 report, Dr. Stoeckel assigned a 45 to 50 percent impairment. Relator contends that this is inconsistent as Dr. Stoeckel was actually opining that claimant was 100 percent impaired.
 {¶ 32} For the same reasons that this magistrate rejected relator's first argument, this magistrate rejects this argument as well. As stated previously, it is a claimant's functional capacity to work and not simply the impairment rating that any one doctor or any group of doctors gives a claimant for their allowed conditions. In fact, it would constitute an abuse of discretion for the commission to rely solely upon the percentage of impairment without examining the claimant's functional capacity for work.
 {¶ 33} Relator cites State ex rel. Whetstone v. Bonded OilCo. (1995), 73 Ohio St.3d 205, and argues that the commission should not combine a relatively low physical impairment with a psychological condition to award PTD compensation. However, that is not what the commission has done here. In the present case, the commission noted that Dr. Koppenhoefer had restricted relator to sedentary to light-duty work and that Drs. Stoeckel and Berg opined that based upon the allowed psychological conditions, claimant was precluded from any sustained remunerative employment. The commission did not take a low physical impairment and combine it with a psychological condition to award PTD compensation; instead, the commission relied upon Drs. Stoeckel and Berg's conclusion that claimant was totally precluded from any sustained remunerative employment based upon his allowed psychological conditions alone. Because the allowed psychological conditions alone preclude claimant from any work, the holding inWhetstone has no application in this case.
 {¶ 34} Relator also contends that the commission abused its discretion by not addressing whether claimant had voluntarily withdrawn from the job market before filing his application for PTD compensation. Upon review of the record, this magistrate finds absolutely no evidence that relator raised this argument before the commission and there is no evidence in the record, one way or the other, addressing the issue. This court should not address an issue which relator appears not to have raised before the commission. Quarto Mining, supra.
 {¶ 35} Relator also contends that the commission abused its discretion by not addressing the non-medical disability factors pursuant to Stephenson, supra. However, when the commission grants PTD compensation based solely upon the allowed medical conditions, discussion of the non-medical disability factors is immaterial. In the present case, the commission found that, based upon the allowed medical conditions alone, especially the psychological conditions, claimant was incapable of performing any sustained remunerative employment. There was no need for the commission to address non-medical disability factors.
 {¶ 36} Lastly, relator maintains that the commission abused its discretion by assigning 90 percent of the award to the 1996 claim and ten percent to the 1990 claim. Although the commission did not explain the rationale for the allocation, relator has not asserted any harm from the decision relating to allocation. Relator is a self-insured employer and all of the allowed conditions occurred during claimant's employment with relator. In the event that the commission did commit error in this regard, relator has not been prejudiced. Furthermore, relator could request reallocation of the award administratively. Relator has failed to do so. Because there is no harm alleged and because relator has an administrative remedy, mandamus relief is inappropriate.
 {¶ 37} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in granting PTD compensation to claimant and this court should deny relator's request for a writ of mandamus.