[Cite as *State ex rel. Tradesman Internatl. v. Indus. Comm.*, 2014-Ohio-1064.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [State of Ohio ex rel.] Tradesman International, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 13AP-122 |
| | : | |
| Industrial Commission of Ohio and Raymond Smith, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on March 20, 2014

*Dinsmore & Shohl, LLP,* and *Michael L. Squillace,* for relator.

*Michael DeWine,* Attorney General, and *Naveen V. Ramprasad,* for respondent Industrial Commission of Ohio.

*Philip J. Fulton Law Office*, and *Chelsea J. Fulton*, for respondent Raymond Smith.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

CONNOR, J.

{¶ 1} Relator, Tradesmen International, brings this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order awarding respondent, Raymond Smith ("claimant"), permanent total disability ("PTD") compensation and to find that claimant is not entitled to that compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate, who has now rendered a decision and

recommendation that includes findings of fact and conclusions of law and is appended to this decision. The magistrate concluded that the commission did not abuse its discretion and recommended that this court not issue the requested writ of mandamus. Relator has filed objections to the magistrate's decision, and the matter is now before us for our independent review.

{¶ 3}   As reflected in the facts given in the magistrate's decision, claimant was involved in a work-related injury on July 23, 2003. Claimant's industrial claim has been allowed for the following conditions: low back sprain, right shoulder sprain, cervical sprain, left wrist sprain, right paracentral disc protusion at L5-S1, chronic pain syndrome, adjustment disorder with depressed mood, moderate to severe.

{¶ 4}   Claimant filed an application for PTD compensation on August 30, 2011. Claimant supported the application with the April 26, 2011 report of Oscar B. Depaz, M.D. Dr. Depaz stated that from a medical standpoint claimant had "significant functional impairment, and at this time his activity level is restricted to sedentary activities with maximum lifting of 10 lbs." (Stipulated Record, exhibit No. 1.)("Stip.R.").   Dr. Depaz further stated that claimant should avoid "repetitive bending, stooping, twisting, lifting, pushing, or pulling" and noted that claimant would need "frequent periods of rest which at times will require him laying down to relieve his back pain." (Stip.R., exhibit No. 1.)

{¶ 5}   Jaqueline Orlando, Ph.D., conducted an independent psychological evaluation of claimant for the allowed psychological condition, and issued her report on March 9, 2012. Dr. Orlando noted that claimant presented feelings of despair, emptiness, and vulnerability, and determined that claimant's depression was in the severe to extreme range. Dr. Orlando determined that claimant had reached maximum medical improvement ("MMI"), and stated that claimant's whole person impairment was 25 percent based solely on the allowed psychological condition. Dr. Orlando also completed an occupation activity assessment form indicating that claimant was incapable of any and all employment based on his chronic adjustment disorder with depressed mood.

{¶ 6}   Timothy J. McCormick, D.O., conducted an independent medical evaluation of claimant on March 16, 2012. Dr. McCormick determined that claimant had reached MMI as to each allowed medical condition, and assessed a 24 percent whole person

impairment. Dr. McCormick completed a physical strength rating form indicating that claimant was incapable of working based solely on the allowed conditions.

{¶ 7} The application came before a staff hearing officer ("SHO") for a hearing on December 13, 2012. The SHO relied on the medical reports of Drs. Depaz, Orlando, and McCormick to conclude that claimant was unable to perform any sustained remunerative employment solely as a result of the allowed conditions. The SHO stated that the PTD compensation was awarded from April 26, 2011 onward, "for the reason that this is the date of Dr. Depaz's report submitted in support of the application." (Stip.R., exhibit No. 16.)

{¶ 8} The magistrate recommended that this court deny the requested writ of mandamus. Specifically, the magistrate determined that the reports of Drs. Orlando and McCormick were some evidence on which the commission could rely to award PTD compensation, that Dr. Depaz's report was some evidence which the commission could rely on to support the start date for the award, and that claimant's failure to pursue vocational rehabilitation was immaterial. Relator presents the following objections to the magistrate's decision:

> I. The Magistrate Erred by Not Finding That the Reports of Drs. Orlando and McCormick were Equivocal and Internally Inconsistent.
>
> II. The Magistrate Erred When She Found That Dr. Depaz's Report Was Some Evidence to Support that Start Date of Respondent's Award Because Dr. Depaz Did Not Find That Respondent was Permanently and Totally Disabled as the Sole Result of His Medical Impairment.
>
> III. The Magistrate Erred by Finding that Respondent Had no Obligation to Pursue Vocational Rehabilitation.

{¶ 9} Pursuant to Civ.R. 53(D)(4)(d), we undertake an independent review of the objected matters "to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." A relator seeking a writ of mandamus must establish: " '(1) a clear legal right to the relief prayed for, (2) a clear legal duty upon respondent to perform the act requested, and (3) that relator has no plain and adequate remedy in the ordinary course of the law.' " *Kinsey v. Bd. of Trustees of the Police &*

*Firemen's Disability & Pension Fund of Ohio*, 49 Ohio St.3d 224, 225 (1990), quoting *State ex rel. Consol. Rail Corp. v. Gorman*, 70 Ohio St.2d 274, 275 (1982). "A clear legal right exists where the [commission] abuses its discretion by entering an order which is not supported by 'some evidence.' " *Id.*

{¶ 10} This court will not determine that the commission abused its discretion when there is some evidence in the record to support the commission's finding. *State ex rel. Rouch v. Eacle Tool & Mach. Co.*, 26 Ohio St.3d 197, 198 (1986). The some evidence standard "reflects the established principle that the commission is in the best position to determine the weight and credibility of the evidence and disputed facts." *State ex rel. Woolum v. Indus. Comm.*, 10th Dist. No. 02AP-780, 2003-Ohio-3336, ¶ 4, citing *State ex rel. Pavis v. Gen. Motors Corp., B.O.C. Group*, 65 Ohio St.3d 30, 33 (1992).

{¶ 11} The relevant inquiry in a determination of PTD is the claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994); Ohio Adm.Code 4121-3-34(B)(1). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record, and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987).

{¶ 12} In its first objection, relator asserts that the magistrate erred by not finding that the respective reports from Drs. Orlando and McCormick were equivocal and internally inconsistent. Equivocal or internally inconsistent medical reports do not constitute some evidence upon which the commission can rely. *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649 (1994); *State ex rel. Lopez v. Indus. Comm.*, 69 Ohio St.3d 445 (1994); *State ex rel. Paragon v. Indus. Comm.*, 5 Ohio St.3d 72 (1983).

{¶ 13} Relator contends that the reports of Drs. Orlando and McCormick are equivocal because they each assess a 25 percent whole person impairment but, despite that relatively low impairment rating, conclude that claimant is permanently and totally disabled. The magistrate, however, correctly noted that a doctor's percentage of impairment rating does not preclude a doctor from rendering an opinion that the claimant is incapable of sustained remunerative employment. *See State ex rel. Schottenstein Stores Corp. v. Indus. Comm.*, 10th Dist. No. 07AP-1066, 2009-Ohio-2142; *State ex rel. Ohio State Univ. v. Indus. Comm.*, 10th Dist. No. 11AP-525, 2012-Ohio-3917,

¶ 8 (noting that "[p]ursuant to *Schottenstein*, Dr. Writesel's 17 percent impairment rating is not inconsistent with his conclusion that claimant is incapable of sustained remunerative employment"); *State ex rel. S. Rosenthal Co., Inc. v. Indus. Comm.*, 10th Dist. No. 03AP-113, 2004-Ohio-549, ¶ 27 (noting that the "Ohio Supreme Court has stated that it would be error for the commission to draw its conclusion with regard to PTD compensation on the basis of percentages alone, without regard to a claimant's actual physical restrictions"). We have independently reviewed the reports issued by Drs. Orlando and McCormick and do not find either doctor's report equivocal or internally inconsistent.

{¶ 14} Relator also asserts that the magistrate erred by refusing to rely on *State ex rel. Kroger Co. v. Johnson*, 128 Ohio St.3d 243, 2011-Ohio-530 to reject the reports of Drs. Orlando and McCormick. The magistrate correctly determined that relator's reliance on *Johnson* was misplaced, as the issue in *Johnson* was whether the claimant had sustained a total loss of use of his right hand. The standard for determining permanent partial disability resulting from loss of use differs from the standard used to determine whether an individual is permanently and totally disabled. *See State ex rel. Kroger Co. v. Wedge*, 10th Dist. No. 11AP-631, 2012-Ohio-4073, ¶ 25 (noting that the relator therein, relying on *Johnson*, suggested "that this court should treat PTD cases in the same manner as loss of use cases; however, the two are not synonymous"). Based on the foregoing, relator's first objection to the magistrate's decision is overruled.

{¶ 15} Relator's second objection asserts that the magistrate erred by finding that Dr. Depaz's report was some evidence to support the April 26, 2011 start date for claimant's PTD compensation. Some evidence upon which the commission relied to award PTD must also support the PTD start date. *State ex rel. Marlow v. Indus. Comm.*, 10th Dist. No. 05AP-970, 2007-Ohio-1464, ¶ 12. Here, the commission expressly relied on Dr. Depaz's report when it granted claimant's PTD application.

{¶ 16} Relator asserts that, because Dr. Depaz opined that relator could perform sedentary work, Dr. Depaz did not find relator permanently and totally disabled solely as a result of medical impairment. Accordingly, relator contends that Dr. Depaz's report could not constitute some evidence to support the start date for PTD compensation. However, " 'where a physician places the claimant generally in the sedentary category but

has set forth functional capacities so limited that no sedentary work is really feasible * * * then the commission does not have discretion to conclude based on that report that the claimant can perform sustained remunerative work of a sedentary nature.' " *State ex rel. Owens Corning Fiberglass v. Indus. Comm.*, 10th Dist. No. 03AP-684, 2004-Ohio-3841, ¶ 56, quoting *State ex rel. Libecap v. Indus. Comm.*, 10th Dist. No. 96APD01-29 (Sept. 5, 1996). Here, Dr. Depaz stated that claimant was restricted to sedentary activities, but also found that claimant would need to lie down frequently to relieve his back pain. Dr. Depaz specifically found that claimant would "have significant difficulty maintaining a regular schedule, and at times, he will need periods of continuous rest to control exacerbations of his back pain." (Stip.R., Exhibit 1.)

{¶ 17} "Sedentary work" means "exerting up to ten pounds of force occasionally * * * and/or a negligible amount of force frequently * * * to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time." Ohio Adm.Code 4121-3-34(B)(2)(a). Dr. Depaz found that claimant could not sit most of the time, as claimant would need to lie down frequently to relieve his back pain. Although Dr. Depaz stated that claimant could perform sedentary work, the restrictions outlined in Dr. Depaz's report were so narrow as to preclude sustained remunerative employment. *See State ex rel. Clevite Elastomers v. Torok*, 10th Dist. No. 02AP-116, 2002-Ohio-4770, ¶ 20, citing *Libecap*. As such, Dr. Depaz's April 26, 2011 report was some evidence to support the start date for the PTD compensation. Relator's second objection to the magistrate's decision is overruled.

{¶ 18} Relator's third objection asserts that the magistrate erred by finding that claimant did not have an obligation to pursue vocational rehabilitation before claimant could be entitled to PTD compensation. Although PTD benefits "may never be denied solely on the basis of medical evidence without consideration of *Stephenson* factors * * * there are some situations where an *award* of such benefits may properly be based on medical factors alone." (Emphasis sic.) *State ex rel. Galion Mfg. Div., Dresser Industries, Inc. v. Haygood*, 60 Ohio St.3d 38, 40 (1991). Where, as here, medical factors alone preclude sustained remunerative employment, there is no practical purpose for the commission to consider the nonmedical factors, "since nonmedical factors will not render the claimant any more or less physically able to work." *Id.* The medical evidence indicated

that claimant was PTD based solely on the allowed medical conditions. Accordingly, a consideration of the nonmedical factors, including whether claimant had or should have pursued vocational rehabilitation, was unnecessary. Relator's third objection to the magistrate's decision is overruled.

{¶ 19} Following independent review, pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the request for a writ of mandamus.

*Objections overruled; writ denied.*

BROWN and O'GRADY, JJ., concur.

———————————

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [State of Ohio ex rel.]<br>Tradesmen International, | : | |
| Relator, | : | No. 13AP-122 |
| | | (REGULAR CALENDAR) |
| v. | : | |
| Industrial Commission of<br>Ohio and Raymond Smith, | : | |
| | : | |
| Respondents. | : | |
| | : | |

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on August 14, 2013

*Dinsmore & Shohl LLP,* and *Michael L. Squillace,* for relator.

*Michael DeWine*, Attorney General, and *Naveen V. Ramprasad,* for respondent Industrial Commission of Ohio.

*Philip J. Fulton Law Office,* and *Chelsea J. Fulton,* for respondent Raymond Smith.

### IN MANDAMUS

{¶ 20} Relator, Tradesmen International, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission"), to vacate its order which awarded permanent total disability ("PTD") compensation to respondent Raymond Smith ("claimant") and ordering the commission to find that claimant is not entitled to that compensation.

<u>Findings of Fact</u>:

{¶ 21} 1. Claimant sustained a work-related injury on July 23, 2003 and his workers' compensation claim has been allowed for the following conditions:

> LOW BACK SPRAIN; RIGHT SHOULDER SPRAIN; CERVICAL SPRAIN; LEFT WRIST SPRAIN; RIGHT PARACENTRAL DISC PROTRUSION AT L5-S1; CHRONIC PAIN SYNDROME; ADJUSTMENT DISORDER WITH DEPRESSED MOOD, MODERATE TO SEVERE.

{¶ 22} 2. Claimant's claim has specifically been disallowed for the following conditions:

> RADICULOPATHY/RADICULITIS AT L5; RIGHT FOOT DROP; SURGICAL FIBROSIS AT THE S1 NERVE ROOT; RUPTURED L4-5 DISC.

{¶ 23} 3. Claimant has not worked since he was injured.

{¶ 24} 4. In September 2005, claimant began receiving Social Security Disability benefits.

{¶ 25} 5. Approximately one year after the accident, claimant underwent surgery consisting of a laminectomy performed at L5-S1. According to claimant, he did not receive much benefit from the surgery.

{¶ 26} 6. Claimant was examined by Eduardo A. Sanchez, M.D., P.A., for his allowed psychological condition. In his February 10, 2006 report, Dr. Sanchez noted that claimant presented with significant depressive symptomology that would require the use of antidepressants. Dr. Sanchez did not believe claimant's allowed psychological condition had reached maximum medical improvement ("MMI"), and believed that claimant was capable of functioning in a job situation. According to Dr. Sanchez, claimant's limitations were due to the pain syndrome and physical consequences, including the use of opiates and other medication necessary to treat his pain and depression.

{¶ 27} 7. Claimant was also examined by Howard B. Weiss, D.O., P.A., who offered an opinion concerning claimant's allowed physical conditions. In his April 4, 2007 report, Dr. Weiss identified the medical records which he reviewed, provided his physical findings upon examination, and concluded that it was unlikely that claimant would be

able to return to work.  Dr. Weiss recommended that a functional capacity evaluation be performed if claimant's work status needed to be specifically addressed.

{¶ 28} 8. On August 29, 2011, claimant filed his application for PTD compensation.

{¶ 29} 9. In support of his application, claimant submitted the April 26, 2011 report of his treating physician Oscar B. Depaz, M.D.  Dr. Depaz addressed claimant's physical condition and opined that he would not be able to maintain any type of regular work schedule, stating:

> From the medical standpoint however, it is my opinion that Mr. Smith has significant functional impairment, and at this time his activity level is restricted to sedentary activities with maximum lifting of 10 lbs. He should avoid repetitive bending, stooping, twisting, lifting, pushing, or pulling. Mr. Smith will need frequent periods of rest which at times will require him laying down to relieve his back pain. He will have significant difficulty maintaining a regular schedule, and at times, he will need periods of continuous rest to control exacerbations of his back pain. Therefore, he will not be able to maintain any type of regular working schedule.

{¶ 30} 10. Claimant was referred to Umesh M. Mhatre, M.D., P.A., for a psychiatric evaluation.  In his November 16, 2011 report, Dr. Mhatre opined that claimant's psychiatric condition was not severe enough, in itself, to keep him from working.  In Dr. Mhatre's opinion, claimant's primary reason for not working resulted from his physical impairment and not his psychological impairment.

{¶ 31} 11.  Claimant was also examined by Gerald A. Mastaw, M.D.  In his January 23, 2012 report, Dr. Mastaw identified the medical records which he reviewed, provided his physical findings upon examination and concluded that claimant's injury did not preclude him from performing at a sedentary-work level.  He did however indicate that claimant needed to continue with pain management.

{¶ 32} 12.  An independent psychological evaluation was conducted by Jacqueline Orlando, Ph.D.  In her March 9, 2012 report, Dr. Orlando noted that, according to the Zung Depression Scale, claimant's depression measured severe to extreme.  She assessed a 25 percent whole person impairment and opined that claimant was incapable of performing any and all employment.

{¶ 33} 13. An independent medical evaluation was performed by Timothy J. McCormick, D.O.  In his March 16, 2012 report, Dr. McCormick identified the allowed conditions in the claim, discussed the history of claimant's injury, noted his physical findings upon examination, concluded that claimant's allowed physical conditions had reached MMI, and he assessed a 24 percent whole person impairment and concluded that claimant was not capable of working.

{¶ 34} 14. Dr. McCormick prepared an addendum dated April 12, 2012 wherein he explained:

> In my report of March 16, 2012, I marked on the Physical Strength Rating form "This injured worker is incapable of work."
>
> My opinions were based on the history of the injury in 2003, surgery in 2004, and no substantial improvement or change over time. He is also taking narcotics of Oxycontin and Roxicodone on a regular basis.
>
> On examination, he was having trouble ambulating, changing position from sitting to standing, and was using a cane for support. Because of his difficulties moving about, I did not have him bend or stoop. He also had physical findings consistent with radiculopathy including sensory abnormalities and weakness in the right leg. There were no inconsistencies during my examination or during the time I spent with him.
>
> Based on these factors it was my opinion that he is not capable of work.

{¶ 35} 15. Stephen Phillips, C.R.C., CDMS, prepared an employability assessment dated June 26, 2012.  Ultimately, Mr. Phillips noted that claimant's work history was limited to work as a pipe fitter, a heavy strength skilled job, noted that his injury had drastically changed his personality and physical abilities, that there was no evidence that his education provided for direct entry into skilled work, that there were no jobs existing in significant numbers which he was able to perform, and that, even if he could perform at a sedentary level, he had no transferable skills to seek other employment.  Mr. Phillips also noted that claimant did not have the capacity to perform writing or business correspondence or perform complex decision making, had marked limitations in his

ability to do complex tasks and participate in normal work routines, that his psychological condition precluded him from being able to attend and concentrate or be productive enough to complete a normal work routine. Mr. Phillips noted that if claimant was able to work, he would be limited to unskilled sedentary or below sedentary employment mostly composed of clerical and assembly/production work. Mr. Phillips concluded that claimant was a very unlikely candidate for any sustained remunerative employment.

{¶ 36} 16. The record also contains the July 5, 2012 employability assessment prepared by J. Kilbane M.Ed., C.R.C., who opined that claimant did have transferable skills and, after noting that claimant had not attempted vocational rehabilitation services, recommended that he should participate in a work adjustment program which would allow him to build up his physical and psychological endurance in a work-simulated environment. Mr. Kilbane ultimately determined that claimant was capable of sustained remunerative employment, stating:

> His reported activity level and the opinions of Dr. Mastaw, Dr. Mhatre, and Dr. Sanchez support that Mr. Smith is capable of sedentary work activity. He is capable of participating in vocational rehabilitation services which will prepare for re-entry into the labor market. His age is not a work-prohibitive factor. It is my opinion that Mr. Smith is capable of sustained remunerative employment based on the allowed conditions of the claim, his physical capabilities, age, education, work history and skills.

{¶ 37} 17. Claimant's application for PTD compensation was heard before a staff hearing officer ("SHO") on December 13, 2012. The SHO relied on the medical reports of Drs. Depaz, McCormick and Orlando and found that claimant was not able to perform any sustained remunerative employment solely as a result of a medical impairment caused by his allowed conditions. The SHO used the April 26, 2011 report of Dr. Depaz as the start date.

{¶ 38} 18. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 39} Relator asserts that the commission abused its discretion: (1) when it granted claimant PTD compensation because the reports of Drs. Orlando and McCormick are equivocal pursuant to *State ex rel. Kroger Co. v. Johnson*, 128 Ohio St.3d 243, 2011-

Ohio-530; (2) by relying on the report of Dr. Depaz as the start date for claimant's award; and (3) by not considering claimant's failure to attempt vocational rehabilitation.

{¶ 40} The magistrate finds that the commission did not abuse its discretion because: (1) the reports of Drs. Orlando and McCormick do constitute some evidence upon which the commission could rely; (2) Dr. Depaz's report does constitute some evidence upon which the commission could rely as the start date for the award; and (3) the commission was not required to deny claimant PTD compensation because he did not pursue vocational rehabilitation.

{¶ 41} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 42} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 43} Relator asserts that the reports of Drs. Orlando and McCormick do not constitute some evidence upon which the commission could rely to find that claimant was entitled to an award of PTD compensation because those reports are equivocal. Relator asserts that a 25 percent impairment means that claimant retains 75 percent of function and cannot be permanently and totally disabled.

{¶ 44} Relator acknowledges that this court has rejected this argument on more than one occasion. For example, in *State ex rel. Schottenstein Stores Corp. v. Indus. Comm.*, 10th Dist. No. 07AP-1066, 2009-Ohio-2142, the employer challenged Dr. Stewart's report on several grounds. One challenge concerned the fact that Dr. Stewart's 15 percent impairment rating was low and could not constitute some evidence upon which the commission could rely to award PTD compensation to the claimant, Haskell Hysell. In adopting the decision of its magistrate, this court stated:

> Analysis begins with the observation that in the caselaw, the Supreme Court of Ohio has, on occasion, characterized an impairment rating in its discussion of medical reports at issue in a mandamus action involving workers' compensation. For example, in *State ex rel. Beiber v. Metco Welding Co.* (1996), 77 Ohio St.3d 1, 3, 670 N.E.2d 463, the court states:
>
>> We have similar difficulty with the commission's characterization of a fifty-nine percent impairment as being "low to moderate." We note that in *State ex rel. Lopez v. Indus. Comm.* (1994), 69 Ohio St.3d 445, 449, 633 N.E.2d 528, 531, we viewed a fifty percent impairment as high. * * *
>
> In *State ex rel. Domjancic v. Indus. Comm.* (1994), 69 Ohio St.3d 693, 635 N.E.2d 372, the court refused to grant a full writ of mandamus pursuant to *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666, following the court's determination that the commission's order denying PTD compensation failed to comply with *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245. The *Domjancic* court instead granted a limited writ, explaining:
>
>> * * * Generally, in cases where *Gay* relief has been recommended, the commission's order has coupled vocationally unfavorable evidence with medical

evidence that assessed a relatively high degree of physical impairment. This case does not fit that profile. * * *

*Id.* at 697, 567 N.E.2d 245.

In *Domjancic,* the commission had relied upon the medical report of commission specialist Dr. Joseph I. Gonzalez who assessed a "16% permanent partial impairment of the whole person for the allowed conditions recognized in this claim." *Id.* at 693, 567 N.E.2d 245.

Presumably, the *Domjancic* court viewed a 16 percent permanent partial impairment as not being a "relatively high degree of physical impairment." *Id.* at 697, 567 N.E.2d 245.

Notwithstanding that cases can be found in which the courts have characterized an impairment rating, relator cites to no case that holds that a doctor's impairment rating for the allowed conditions precludes him or her from rendering an opinion that the claimant is incapable of sustained remunerative employment. The lack of a direct correlation between a doctor's impairment rating and the claimant's ability to perform sustained remunerative employment is recognized at Ohio Adm.Code 4121-3-34(D)(3)(f):

> The adjudicator shall not consider the injured worker's percentage of permanent partial impairment as the sole basis for adjudicating an application for permanent and total disability.

Moreover, relator's suggestion that Dr. Stewart's 15 percent impairment rating is low fails to recognize that, with respect to claimant's chronic pain, Dr. Stewart cautioned "[t]here is no other criteria in the Guides for additional impairment beyond this 15%" for the allowed conditions of the claim. Thus, the 15 percent rating does not include the chronic pain.

In short, there is no inconsistency as a matter of law between Dr. Stewart's narrative evaluation of the allowed conditions and his conclusion on the physical strength rating form that "[t]his injured worker is not capable of physical work activity."

*Schottenstein Stores* at ¶ 59-65.

{¶ 45} Specifically, relator asserts that, from a psychological and physical standpoint respectively, findings of 25 percent impairment cannot constitute an inability to perform any sustained remunerative employment. Drs. Orlando and McCormick each found a 25 percent whole person impairment and yet each ultimately concluded that claimant was not able to perform any sustained remunerative employment due solely to the allowed conditions they considered.[1]

{¶ 46} The magistrate finds that this court's decision in *Schottenstein Stores* supports the commission's order here. Relator may argue that the *Schottenstein Stores* case is not on point, because in that case, there was extensive discussion that Hysell suffered chronic pain syndrome. However, the magistrate notes that there is evidence in this case that claimant has a significant amount of chronic pain in his lower back that radiates to his legs. In finding that he was permanently and totally disabled, Dr. Writesel specifically noted that claimant had "persistent back pain symptoms that preclude his ability to perform any duties in a sustained functional status." Pain can support a court finding of PTD. As in *Schottenstein Stores*, the magistrate would deny relator's request for a writ of mandamus.

{¶ 47} To the extent that relator relies on *Kroger Co.*, the argument is not persuasive. *Kroger* involved an award of permanent partial disability due to the alleged loss of use of Dan C. Johnson's right hand. This court found that Dr. Renneker's assessment of a 27 percent hand impairment was inconsistent with her conclusion that Johnson had lost the total use of his hand. (Johnson retained 73 percent of his hand's use and was not a total loss.) The standard applied in determining loss of use issues differs significantly from the standard applied in determining whether an injured worker is permanently totally disabled. *See also State ex rel. Kroger Co. v. Wedge,* 10th Dist. No. 11AP-631, 2012-Ohio-4073, wherein this court specifically addressed and rejected this argument.

{¶ 48} As such, relator's contention that the reports of Drs. Orlando and McCormick do not constitute some evidence upon which the commission could rely because they only assess a 25 percent whole person impairment is rejected.

---

[1] Dr. Orlando found a 25 percent psychological impairment and Dr. McCormick found a 24 percent physical impairment.

{¶ 49} Relator also contends that the report of Dr. Depaz does not constitute some evidence upon which the commission could rely as the start date for the award. Relator contends that Dr. Depaz indicated that claimant was able to perform sedentary work, and, as such, the date of his report cannot be used as the start date.

{¶ 50} Relator cites to this court's decision in *State ex rel. Phillips v. Complete Carpentry, Inc.,* 10th Dist. No. 09AP-29, 2009-Ohio-5546. Richard Phillips sustained a work-related injury and received temporary total disability ("TTD") compensation until March 21, 2007 when his allowed conditions were found to have reached MMI. Phillips filed his application for PTD compensation on July 7, 2008. The commission granted TTD compensation with an effective start date of June 14, 2007 based on the office notes and MEDCO-14 completed by Paige S. Gutheil, D.O., wherein Dr. Gutheil opined that Phillips was permanently and totally disabled from all sustained remunerative employment due to the allowed conditions in the claim.

{¶ 51} Phillips filed a request for reconsideration regarding the start date of his PTD compensation seeking a start date of March 21, 2007, when his TTD compensation ended. The commission denied Phillips' request noting that the March 22, 2007 office note of Dr. Gutheil indicated that Phillips would look into a functional capacity evaluation and vocational rehabilitation to determine the extent of his disability.

{¶ 52} Phillips filed a mandamus action in this court arguing that the commission abused its discretion by not selecting the earlier start date. This court found that the commission did not abuse its discretion and rejected Phillips argument, stating:

> The medical evidence clearly was equivocal at best until the June 14, 2007 report from the treating physician. The doctor's report, up until then, assumed Phillips could do sedentary work. Rehabilitation efforts were pursued. Only after attempts at rehabilitation were abandoned did the doctor report that Phillips was PTD. From a medical perspective, the SHO's finding was appropriate.

*Id.* at ¶ 7.

{¶ 53} Relator contends that Dr. Depaz's statement in his April 26, 2011 report suffers from the same defect. For the reasons that follow, the magistrate disagrees.

{¶ 54} As noted previously, Dr. Depaz stated as follows in his April 26, 2011 report:

From the medical standpoint however, it is my opinion that Mr. Smith has significant functional impairment, and at this time his activity level is restricted to sedentary activities with maximum lifting of 10 lbs. He should avoid repetitive bending, stooping, twisting, lifting, pushing, or pulling. Mr. Smith will need frequent periods of rest which at times will require him laying down to relieve his back pain. He will have significant difficulty maintaining a regular schedule, and at time, he will need periods of continuous rest to control exacerbations of his back pain. Therefore, he will not be able to maintain any type of regular working schedule.

{¶ 55} Relator contends that Dr. Depaz has opined that claimant can perform sedentary work activities. If that were the only sentence in the paragraph, the magistrate would agree with relator's argument. However, Dr. Depaz went on to note that claimant needed to avoid repetitive bending, stooping, twisting, lifting, pushing, or pulling. He indicated that claimant would need frequent periods of rest and, at times, he would need to lay down to relieve his back pain. Dr. Depaz indicated that claimant would have significant difficulty maintaining a regular schedule because he would need periods of continuous rest to control exacerbations of his back pain. As such, Dr. Depaz concluded that claimant would not be able to maintain any type of regular work schedule.

{¶ 56} The magistrate finds that Dr. Depaz's report differs from the report at issue in *Phillips*. Here, Dr. Depaz indicated that claimant's activity level was restricted to sedentary activities but that, because of his back pain and the necessity of rest, he would not be able to maintain a regular work schedule. As such, this portion of relator's argument is not well-taken. The magistrate finds that the report of Dr. Depaz does support the start date of PTD compensation and the commission did not abuse its discretion.

{¶ 57} Relator's final argument is that the commission abused its discretion by failing to find that claimant's failure to pursue vocational rehabilitation should bar him from receiving PTD compensation. Relator points to certain medical reports in the record and argues that those reports demonstrate that claimant could have attempted vocational rehabilitation. For example, in his February 10, 2006 report, Dr. Sanchez opined that claimant's allowed psychological condition had not yet reached MMI and did not preclude him from functioning in a job situation. Dr. Sanchez indicated that claimant's limitations

were due to his back pain and the medications he was taking. Relator also points to the April 4, 2007 report of Dr. Weiss who concluded that, while it was unlikely claimant would return to work, a functional capacity evaluation should be performed if his work status needed to be addressed. Relator also points to the March 11, 2011 report of Kenneth G. Rice, Ph.D. and H.E. Cadiz, Ph.D., both licensed psychologists, who opined that claimant had a 15 percent whole person impairment due to his allowed psychological condition.

{¶ 58} The commission and courts can demand accountability of a claimant who, despite time and medical ability to do so, never tried to further their education or learn new skills. *State ex rel. Bowling v. Natl. Can Corp.*, 77 Ohio St.3d 148 (1996). Further, R.C. 4123.58(D)(4) precludes PTD compensation where the employee's inability to work is a result of the employee's failure to engage "in educational or rehabilitative efforts to enhance the employee's employability, unless such efforts are determined to be in vain."

{¶ 59} Contrary to relator's assertion, current case law does not mandate that the commission deny PTD compensation if the injured worker does not engage in efforts to retrain. Instead, the statute states that PTD compensation can still be awarded where there is no participation in vocational rehabilitation if such participation would have been in vain. The magistrate has reviewed the record. According to the statement of facts prepared by the commission, the magistrate notes that claimant's claim was originally allowed for low back sprain, right shoulder, neck, and left wrist strain/sprain in September 2003. Claimant's claim was additionally allowed for right paracentral disc protrusion at L5-S1 in April 2004. The claim was additionally allowed for chronic pain syndrome in March 2006 and the psychological condition, adjustment disorder with depressed mood, moderate to severe was allowed in May 2006. While it is undisputed that claimant had back surgery in 2004, the record does not indicate how long claimant received TTD compensation after the surgery and it is not mentioned in any of the briefs or medical reports. Further, the record indicates that claimant attempted some type of physical therapy three times but that, due to his chronic pain, he was not able to continue.

{¶ 60} Following a review of the stipulation of evidence, the magistrate cannot say that the commission abused its discretion by not holding claimant's failure to pursue

vocational rehabilitation against him.    Further, there is no requirement that the commission explain that claimant's lack of participation was excusable.

{¶ 61} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion by awarding claimant PTD compensation and this court should deny relator's request for a writ of mandamus.


/S/ MAGISTRATE
STEPHANIE BISCA BROOKS


**NOTICE TO THE PARTIES**
Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).