[Cite as *State ex rel. Kindred Healthcare Operating, Inc. v. Indus. Comm.*, 2016-Ohio-7128.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel.<br>Kindred Healthcare Operating, Inc., | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 15AP-1106 |
| | : | |
| Industrial Commission of Ohio<br>and Angela Mohler, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on September 30, 2016

**On brief:** *Thomas & Company, L.P.A.,* and *Cheryl L. Jennings,* for relator.

**On brief:** *Michael DeWine*, Attorney General, and *Shaun P. Omen,* for respondent Industrial Commission of Ohio.

**On brief:** *Larrimer & Larrimer,* and *Thomas L. Reitz,* for respondent Angela Mohler.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BROWN, J.

{¶ 1} Relator, Kindred Healthcare Operating, Inc. ("relator"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that granted an award of permanent total disability ("PTD") compensation to respondent Angela Mohler ("claimant") and ordering the commission to find that she is not entitled to that compensation.

{¶ 2}   This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended that this court grant a limited writ of mandamus ordering the commission to vacate its award granting relator PTD compensation and reconsider the issue after taking steps to remedy the ambiguity in Dr. Nancy Rennecker's report. Claimant and the commission have each raised one objection, while relator has raised three objections.

{¶ 3}   We will address claimant's objection, the commission's objection, and relator's first and second objections together, as they are related. Claimant and the commission argue in their objections that the magistrate erred by substituting her judgment for that of the commission, failing to find Dr. Rennecker's report was "some evidence" on which the commission could rely, and granting a limited writ of mandamus. To the contrary, relator argues in its first objection that the magistrate erred when she failed to determine, as a matter of law, that Dr. Rennecker's report was not some evidence that can be relied on in support of the PTD award. Relator argues in its second objection that the magistrate erred when she substituted her understanding of and/or experience with certain medical conditions/issues for the undisputed medical evidence contained within the claim file and on which the commission previously relied.

{¶ 4}   The magistrate ultimately found there was "some potential ambiguity" in Dr. Rennecker's report. The magistrate first noted that, despite the fact that lumbosacral radiculitis neuritis was a disallowed condition, Dr. Rennecker stated in her report that claimant suffered from constant low back pain with pain radiating into her legs and assigned impairment based on "L5 and right S1 radiculopathy." However, the magistrate explained that claimant had complained of back pain with pain radiating into her legs since her original 1992 injury and received approval for epidural lumbar injections; thus, regardless of whether her claim was disallowed for lumbosacral radiculitis neuritis, claimant had experienced pain radiating down her legs for a long period and had been approved for treatment for such. The magistrate concluded that the fact that Dr. Rennecker discussed claimant's radiculopathy did not necessarily mean that she considered the disallowed condition, and the radiculopathy was consistent with her allowed conditions and her symptomology.

{¶ 5}  We agree with the magistrate's analysis up to this point.  However, we depart with the magistrate on her subsequent determination that a "potential" ambiguity, nevertheless, arose in this case as to whether Dr. Rennecker's assignment of impairment was based merely on claimant's symptom of pain radiating down her leg or based on the disallowed condition that would also cause pain radiating down the leg. The magistrate found Dr. Rennecker's report was unclear on this issue.  However, there is simply nothing in Dr. Rennecker's report that gives any indication that her determination was based on the disallowed condition of lumbosacral radiculitis neuritis. *See State ex rel. Tradesmen Internatl. v. Indus. Comm.*, 143 Ohio St.3d 336, 2015-Ohio-2342 (commission could rely on doctor's report when there was no indication that doctor had considered any non-allowed medical conditions). Dr. Rennecker never mentions lumbosacral radiculitis neuritis and specifically lists the correct allowed conditions at the beginning of her report. We choose not to create ambiguity where none explicitly exists, and decline to substitute our judgment for the judgment of the commission, which believed Dr. Rennecker's report referred solely to the allowed conditions. *See id.* (the commission has discretion, as the exclusive evaluator of the weight and credibility of the evidence, to determine whether the doctor's description of the claimant's pain actually refers to the allowed condition). Given that Dr. Rennecker examined claimant on the allowed conditions and explicitly concluded that claimant was permanently and totally disabled based on those allowed conditions, we find her report constitutes some evidence on which the commission could rely. Thus, we sustain the commission's and claimant's objections and overrule relator's first and second objections, finding them to be without merit. We do note that, with regard to relator's second objection that the magistrate erred when she referenced her own experience with certain medical conditions, although the magistrate should consider only evidence within the record, our analysis above does not rely on the complained of references.

{¶ 6}  Relator argues in its third objection that the magistrate erred when she failed to determine, as a matter of law, that claimant's refusal to participate in vocational rehabilitation efforts precludes her from receiving PTD benefits.  Relator is correct that the Supreme Court of Ohio has repeatedly addressed the obligation of a PTD claimant to undergo opportunities for rehabilitation. *See State ex rel. Barfield v. Indus. Comm.*, 10th Dist. No. 10AP-61, 2010-Ohio-5552, ¶ 30, citing *State ex rel. B.F. Goodrich Co. v. Indus.*

*Comm.*, 73 Ohio St.3d 525 (1995); *State ex rel. Bowling v. Natl. Can Corp.*, 77 Ohio St.3d 148 (1996); *State ex rel. Wood v. Indus. Comm.*, 78 Ohio St.3d 414 (1997); *State ex rel. Wilson v. Indus. Comm.*, 80 Ohio St.3d 250 (1997); *State ex rel. Cunningham v. Indus. Comm.*, 91 Ohio St.3d 261 (2001). However, here, the commission determined that claimant was permanently and totally disabled based solely on medical factors. When medical factors alone preclude sustained remunerative employment, the commission is not required to consider the non-medical factors, including whether claimant had or should have pursued vocational rehabilitation. *State ex rel. Tradesman Internatl. v. Indus. Comm.*, 10th Dist. No. 13AP-122, 2014-Ohio-1064, ¶ 18, *aff'd* in *Tradesmen Internatl.,* 2015-Ohio-2342. *See also State ex rel. Honda of Am. Mfg. v. Indus. Comm.*, 10th Dist. No. 14AP-82, 2014-Ohio-5245, ¶ 13, citing *Tradesman Internatl.,* 2015-Ohio-2342. Here, the commission determined claimant was permanently and totally disabled based on medical factors alone pursuant to Dr. Rennecker's report. Therefore, neither the commission nor the magistrate were required to address claimant's failure to participate in vocational rehabilitation efforts. Therefore, we overrule relator's third objection, finding it to be without merit.

{¶ 7} Accordingly, after an examination of the magistrate's decision, an independent review of the record, pursuant to Civ.R. 53, and due consideration of the commission's, relator's, and claimant's objections, we sustain the commission's and claimant's objections and overrule relator's objections. We adopt the magistrate's findings of facts but not her conclusions of law. Relator's writ of mandamus is denied.

*Commission's and Claimant's objections sustained;*
*Relator's objections overruled;*
*and writ of mandamus denied.*

KLATT and SADLER, JJ., concur.

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel.<br>Kindred Healthcare Operating, Inc., | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 15AP-1106 |
| | : | |
| Industrial Commission of Ohio<br>and Angela Mohler, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on June 21, 2016

*Thomas & Company, L.P.A.,* and *Cheryl L. Jennings,* for relator.

*Michael DeWine,* Attorney General, and *Shaun P. Omen,* for respondent Industrial Commission of Ohio.

*Larrimer and Larrimer,* and *Thomas L. Reitz,* for respondent Angela Mohler.

### IN MANDAMUS

{¶ 8} Relator, Kindred Healthcare Operating, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which granted permanent total disability ("PTD") compensation to respondent, Angela Mohler, and ordering the commission to find that she is not entitled to that compensation.

Findings of Fact:

{¶ 9} 1. Mohler sustained two work-related injuries during the course of her employment with relator. The first occurred in 1992. According to the medical records submitted, Mohler bent over to pick up lunch trays from the bottom shelf of a cart when she noted the sudden onset of severe low back pain with pain shooting down her legs. Her 1992 claim is allowed for: "lumbosacral sprain/strain; disc bulge at L4-5 and L5-S1; lumbar disc degeneration." This claim is specifically disallowed for the following conditions: "lumbosacral radiculitis neuritis; facet arthropathy L3-4, L4-5, and L5-S1; disc bulge L3-4."

{¶ 10} 2. Mohler's second injury occurred in 2007 when she slipped and fell on a wet floor, landing on her left knee. This claim is allowed for the following conditions: "left knee sprain; left knee contusion; medial meniscus tear left knee; substantial aggravation of pre-existing joint disease left knee."

{¶ 11} 3. Mohler has not undergone any surgical treatment for her back injury, instead pursuing medical/non-surgical treatment. With regard to her knee injury, Mohler has undergone left knee arthroscopic surgery, as well as total left knee replacement surgery.

{¶ 12} 4. Mohler continued working until August 2, 2013. At that time, she was no longer able to tolerate the standing and walking, as well as the bending and lifting required by her job.

{¶ 13} 5. Over time, Mohler's back conditions worsened. She experienced increased low back pain with radiation into her legs. Although EMG studies were normal, Mohler underwent several epidural steroid injections which did not provide lasting relief.

{¶ 14} 6. In 2014, the Ohio Bureau of Workers' Compensation ("BWC") filed a motion to terminate Mohler's temporary total disability ("TTD") compensation.

{¶ 15} 7. Following a hearing on July 7, 2014, a district hearing officer ("DHO") relied on reports from Drs. Taylor and Yu, and terminated her TTD compensation, stating:

> This decision is based on the 05/14/2014 report from Dr. Taylor. The 09/03/2013 and 12/27/2013 reports from Dr. Yu indicate the Injured Worker had 100% relief from her pain after a trial of facet medial branch blocks. This indicates the ongoing symptoms are due mainly to the facet arthropathy that has been denied in the claim. This is found to support

Dr. Taylor's opinion of maximum medical improvement for the allowed conditions.

{¶ 16} 8. Mohler appealed and the matter was heard before a staff hearing officer ("SHO") on August 14, 2014. The SHO affirmed the prior DHO order, but relied solely on the report of Dr. Taylor, stating:

The Staff Hearing Officer finds that the allowed conditions of this claim have reached maximum medical improvement. The Hearing Officer relies upon Dr. Taylor's 05/14/2014 report. Dr. Taylor opined that the allowed conditions had reached maximum medical improvement.

{¶ 17} 9. Further appeals were refused.

{¶ 18} 10. Mohler filed her application for PTD compensation on January 20, 2015. Mohler's application was supported by the December 15, 2014 report of Nancy Renneker, M.D. In her report, Dr. Renneker identified the allowed conditions in Mohler's claims, identified the medical records which she reviewed, and provided her physical findings on examination, which included:

Right passive straight leg raise test is possible to 40 degrees of right hip flexion and Angela Mohler notes an increase in low back, right buttock and right posterior thigh to knee pain with this test. Left passive straight leg raise test is possible to 40 degrees of left hip flexion and Angela Mohler notes an increase in low back pain with this test.

{¶ 19} Ultimately, Dr. Renneker determined that, in the 1992 claim, allowed for low back conditions, Mohler had a 27 percent whole person impairment. Dr. Renneker arrived at this conclusion as follows:

Based on the 5th Edition of the AMA Guides to the Evaluation of Permanent Impairment, Angela Mohler has a 27% whole person impairment due to: (1) unoperated L4-5 disc bulge (II-C) represents a 7% whole person impairment (2) unoperated second lumbar level i.e. unoperated L5-S1 disc bulge/L5-S1 degenerative disc disease (II-E) represents an additional 1% whole person impairment (3) decreased active lumbar spine range of motion represents an additional 17% whole person impairment. Per 5th Edition of the AMA Guidelines (Page 374, Paragraph 1), due to the involvement of more than one level/more than one segment in the same spinal region e.e. L4-5 disc bulge and L5-S1 disc bulge/L5-S1 degenerative disc disease, the impairment rating via the range of motion model is preferred and (4) right lower

extremity impairment due to L5 and right S1 radiculopathy with decreased sensation and dysesthesia in right L5 and right S1 dermatomes and this represents a combined 10% right lower extremity impairment, or a 4% whole person impairment. This 4% whole person impairment due to right lower extremity impairment is combined with the above other listed impairments, for a total 27% whole person impairment for this work related injury of 2-8-1992 (Claim no. 92-44120).

{¶ 20} With regard to the 2007 claim, allowed for right knee conditions, Dr. Renneker opined that Mohler had a 20 percent whole person impairment.

{¶ 21} 11. Relator had Mohler examined by Paul T. Hogya, M.D. In his March 31, 2015 report, Dr. Hogya identified both the allowed and disallowed conditions in Mohler's claims, identified and discussed the medical records which he reviewed, provided his physical findings on examination, and concluded that Mohler's allowed conditions had reached maximum medical improvement ("MMI"), that she had an 8 percent whole person impairment in the 1992 claim, and a 21 percent whole person impairment in the 2007 claim. Dr. Hogya opined that Mohler could perform sedentary work activity with the following exceptions: avoid crawling, avoid ladders, drive up to 45 minutes at a time, sit and stand up to 60 minutes at a time, and stand and walk up to 30 minutes at a time.

{¶ 22} 12. Mohler was also examined by Robert A. Fada, M.D. In his June 2, 2015 report, Dr. Fada identified both the allowed and disallowed conditions in Mohler's claims, identified the medical records which he reviewed, provided his physical findings upon examination, and opined that relator's allowed conditions had reached MMI, that she had an 8 percent whole person impairment in the 1992 claim, and a 20 percent whole person impairment in the 2007 claim. Thereafter, Dr. Fada opined that Mohler was capable of performing sedentary work with the only limitation of avoiding ladders.

{¶ 23} 13. Relator's application for PTD compensation was heard before an SHO on September 17, 2015. The SHO relied exclusively on the December 15, 2014 report of Dr. Renneker who opined that Mohler had a 27 percent whole person impairment for her low back conditions, a 20 percent whole person impairment for her knee condition, and that she was unable to perform any sustained remunerative employment. Thereafter, the SHO determined that the award should be apportioned 50 percent in the 1992 claim and 50 percent in the 2007 claim.

{¶ 24} 14. Relator's request for reconsideration was denied by order of the commission mailed November 12, 2015.

{¶ 25} 15. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 26} In this mandamus action, relator asserts that the commission abused its discretion as follows: (1) relying on the report of Dr. Renneker which does not constitute some evidence; (2) failing to consider the non-medical disability factors; (3) failing to consider Mohler's failure to participate in vocational rehabilitation; (4) failing to consider the multitude of unrelated medical conditions from which Mohler suffers; and (5) failing to explain how the award was allocated.

{¶ 27} The magistrate finds that Dr. Renneker's report might constitute some evidence upon which the commission could rely. Because there is some potential ambiguity in Dr. Renneker's report (which will be explained below), which can be answered with an addendum report, the other issues raised by relator should not be addressed at this time.

{¶ 28} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 29} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 30} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 31} Relator argues that Dr. Renneker's report does not constitute some evidence upon which the commission could rely because Dr. Renneker did not acknowledge and specifically identify the conditions which were disallowed, and Dr. Renneker considered those disallowed conditions in rendering her decision.

{¶ 32} There is no requirement that a physician list non-allowed conditions, and relator cannot cite to any such requirement. Further, just because the other examining physicians listed the disallowed conditions and specifically noted that they were disallowed, does not mean that Dr. Renneker considered those disallowed conditions in rendering her opinion.

{¶ 33} In its brief, relator argues that Dr. Renneker included the "specifically disallowed condition of Lumbosacral Radiculitis Neuritis in her calculation of Ms. Mohler's overall whole person impairment rating." (Relator's Brief, 9.) In support, relator points out that Dr. Renneker noted that Mohler had near constant low back pain with pain radiating into her legs and asserts that Dr. Renneker considered the specifically disallowed condition of lumbosacral radiculitis neuritis when she stated:

> [R]ight lower extremity impairment due to L5 and right S1 radiculopathy with decreased sensation and dysesthesia in right L5 and right S1 dermatomes and this represents a combined 10% right lower extremity impairment, or a 4% whole person impairment.

{¶ 34} In 1992, when Mohler sustained this injury to her back, she complained of the sudden onset of back pain with pain radiating into her legs. Eventually, this pain was severe enough that Mohler requested and relator approved epidural lumbar injections,

which were largely unsuccessful. As such, regardless of whether or not her claim was disallowed for the specific condition of lumbosacral radiculitis neuritis, relator has experienced pain radiating down her legs, on and off, for quite some time and relator has approved treatment for those symptoms.

{¶ 35} Counsel for relator concedes that the terms radiculopathy, radiculitis, radicular, radiate, and neuritis, all relate to nerves and pain associated with nerves. Further, radiculopathy can refer to the symptom of pain radiating down one's leg which, while subjective, is no less real, or to a condition which can be diagnosed through testing. Just because Mohler's claim was specifically disallowed for lumbosacral radiculitis neuritis does not mean that she does not experience pain radiating down her leg as a result of the allowed conditions in her claim.

{¶ 36} Mohler's claim is allowed for disc bulge at L4-5 and L5-S1. It is commonly understood that a bulging disc can encroach upon and irritate a nerve and, as a result, cause pain to radiate down a person's leg. The fact that Dr. Renneker discusses Mohler's radiculopathy (radiating pain), does not mean that she is considering the disallowed condition. Dr. Renneker could be opining that the bulging disc is irritating a nerve sufficiently to cause the symptom of radiculopathy. The fact that Dr. Renneker discussed more ongoing radiculopathy is consistent not only with the allowed conditions in Mohler's claims, but also with her symptomology over the years.

{¶ 37} The magistrate finds that the report of Dr. Renneker could constitute some evidence upon which the commission could rely to find that Mohler was unable to perform some sustained remunerative employment. If it does, the remainder of relator's arguments would be rejected.

{¶ 38} Relator asks this court to determine that the commission wrongly concluded that Dr. Renneker was referring to Mohler's symptoms when it is clear Dr. Renneker considered the disallowed conditions. The commission evaluates the evidence and determines its credibility and weight. There is a question here, however, concerning Dr. Renneker's report which this court cannot answer. It is unclear whether Dr. Renneker considered Mohler's symptoms of pain radiating down her leg or to the disallowed condition which would also cause pain radiating down the leg. Dr. Renneker's report is unclear in this regard.

{¶ 39} Based on the foregoing, it is the magistrate's decision that this court issue a limited writ of mandamus ordering the commission to vacate its award granting relator PTD compensation and reconsider the issue after taking steps to remedy the ambiguity in Dr. Renneker's report.

{¶ 40} As noted in the findings of fact, Mohler last worked for relator on August 2, 2013. At that time, Mohler was no longer able to tolerate the standing and walking as well as the bending and lifting required for her job. Mohler had worked as a dietary aide for relator for 29 years, since 1984. This is the only job listed on Mohler's application for PTD compensation.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).