[Cite as *State ex rel. Bergen v. Northgate Masonry, Inc.*, 2016-Ohio-7705.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Mark Bergen, | : | |
| Relator, | : | |
| v. | : | No. 15AP-923 |
| Northgate Masonry, Inc. and | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio, | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on November 10, 2016

**On brief:** *Barron Peck Bennie & Schlemmer, LPA*, and *Mark L. Newman*, for relator.

**On brief:** *Michael DeWine*, Attorney General, and *Amanda B. Brown*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DORRIAN, P.J.

{¶ 1} In this original action, relator, Mark Bergen, requests this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation and ordering the commission to find relator is entitled to PTD compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings

of fact and conclusions of law, which is appended hereto. The magistrate recommends this court deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed the following three objections to the magistrate's decision:

[I.] The Magistrate failed to properly evaluate whether the Industrial Commission complied with the requirements of OAC 4121-3-34(D)(1)(d) when finding that Relator voluntarily abandoned the workforce.

[II.] The Magistrate incorrectly found that Relator failed to present medical evidence from his treating physician setting forth his physical capabilities between 2004 and 2014.

[III.] The Magistrate improperly found that there is no medical evidence that Relator was medically unable to participate in vocational rehabilitation services.

{¶ 4} We begin by examining the third objection. The magistrate stated, "[e]ven now, relator fails to present any medical evidence contemporaneous with the time he was referred for vocational rehabilitation and/or following the denial of his first application for PTD compensation that would support a finding that he was medically unable to pursue vocational rehabilitation or work. To the extent that relator asserts the SHO failed to consider whether he was medically able to work, he failed to present any evidence." (Appended Magistrate's Dec. at ¶ 43.)

{¶ 5} Relator asserts this conclusion was error and points to (1) Dr. Jeffery L. Stambough's May 21, 2010 request for temporary total disability ("TTD") compensation (C-84), and (2) the October 19, 2010 and July 31, 2012 Managed Care Organization Sheakley UniComp ("MCO") assessments.

{¶ 6} The commission argues that Dr. Stambough's C-84 can not serve as evidence of relator's physical ability to participate in vocational rehabilitation in 2012 because Ohio Adm.Code 4123-18-03(C)(3)(d) requires evidence by his physician of record regarding job restrictions "dated not more than 180 days prior to the referral." (Commission's Brief at 11.) According to the commission, the MCO's October 19, 2010 decision can not be used for the same reason. Finally, regarding the MCO vocational rehabilitation screening tool ("MCO screening tool") used in 2012, the commission notes that relator mischaracterizes the reasons vocational rehabilitation was not offered. Relator argues it was not offered because he was not medically stable to participate in the

same. The commission argues the form itself indicates that although relator is at maximum medical improvement, "there are no documented restrictions within the past 180 days." (July 31, 2012 MCO screening tool at 2.) The form further states that relator is not receiving TTD compensation, non-working wage loss, PTD compensation, loss of use award, permanent partial impairment award and he is not a catastrophic injury, a job retention referral, or employed by a state agency or university at the time of the injury.

{¶ 7} We agree that Dr. Stambough's May 21, 2010 report and the MCO's October 19, 2010 report were dated more than 180 days prior to the referral to vocational rehabilitation on July 31, 2012 and, therefore, could not be considered by the commission when determining whether relator was physically able to participate in vocational rehabilitation in 2012. Ohio Adm.Code 4123-18-03(C) requires:

> Eligibility for vocational rehabilitation services.
>
> To be eligible for rehabilitation services the injured worker must meet the following criteria:
>
> (1) Recognized claim that is either:
>
> (a) A claim allowed by an order of the bureau of workers' compensation or the industrial commission or of its hearing officers with eight or more days of lost time due to a work related injury; or
>
> (b) A claim certified by a state university or state agency; or
>
> (c) A claim certified by a self-insuring employer.
>
> (2) The injured worker must have a significant impediment to employment or the maintenance of employment as a direct result of the allowed conditions in the referred claim.
>
> (3) The injured worker must have at least one of the following present in the referred claim:
>
> (a) The injured worker is receiving or has been awarded temporary total, non-working wage loss, or permanent total compensation for a period of time that must include the date of referral. For purposes of this section, payments made in lieu of temporary total compensation (e.g. salary continuation) shall be treated the same as temporary total compensation; or

(b)  Granted a scheduled award under division (B) of section 4123.57 of the Revised Code;

(c)  Received or awarded a permanent partial award under division (A) of section 4123.57 of the Revised Code and has job restrictions as a result of that award documented by the physician of record and dated not more than one hundred eighty days prior to the date of referral; or

(d)  Determined to have reached maximum medical improvement in the claim (with eight or more days of lost time due to a work related injury) by an order of the bureau or the industrial commission, or the injured worker's physician of record has documented in writing that the injured worker has reached maximum medical improvement in the claim, and the injured worker is not currently receiving compensation *and has job restrictions in the claim documented by the physician of record and dated not more than one hundred eighty days prior to the date of referral; or*

(e)  Is receiving job retention services to maintain employment or satisfies the criteria set forth in paragraph (E) of this rule on the date of referral; or

(f)  Sustained a catastrophic injury claim and a vocational goal can be established; or

(g)  Was receiving living maintenance wage loss not more than ninety days prior to the date of referral, has continuing job restrictions documented by the physician of record as a result of the allowed conditions in the claim, and has lost his or her job through no fault of his or her own.

(4)  The injured worker must not be working on the date of referral, with the exception of referral for job retention services.

(Emphasis added.)

{¶ 8}  Furthermore, we agree with the commission's characterization of the 2012 MCO screening tool that although it included a finding that relator was not medically stable to participate in vocational rehabilitation, it ultimately concluded that relator did not present evidence of physical restrictions "within the past 180 days." Accordingly, the magistrate correctly concluded that when relator was referred to vocational rehabilitation

in 2012, he failed to present medical evidence of his restrictions which were based on an examination within 180 days of referral as required. Accordingly, we overrule the third objection.

{¶ 9} We next examine the first and second objections. Relator also argues the magistrate failed to properly evaluate the requirements of Ohio Adm.Code 4121-3-34(D)(1)(d) when finding that relator voluntarily abandoned the workforce and incorrectly found that relator did not present medical evidence from his treating physician at or near the time of removal/retirement. Ohio Adm.Code 4121-3-34 states:

> (D) Guidelines for adjudication of applications for permanent total disability
>
> The following guidelines shall be followed by the adjudicator in the sequential evaluation of applications for permanent total disability compensation:
>
> (1)
>
> * * *
>
> (d) If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself or herself from the work force, the injured worker shall be found not to be permanently and totally disabled. If evidence of voluntary removal or retirement is brought into issue, *the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement.*

(Emphasis added.)

{¶ 10} Relator argues that the staff hearing officer's ("SHO") order of March 18, 2015, which denied relator PTD benefits, fails to specify the SHO reviewed or considered any medical evidence of relator's medical condition at or near the time of removal. Relator argues the SHO was required to specify what evidence was relied on in reaching the decision to deny him benefits pursuant to *State ex rel. Mitchell v. Robbins & Myers, Inc.*, 6 Ohio St.3d 481 (1983). Relator further argues the SHO was required to consider the following medical evidence when considering the question of voluntary removal: (1) Dr. Stambough's November 17, 2010 report, and (2) Interventional Pain Specialists' November 9, 2010 report. In response, the commission states that relator was denied

PTD on June 10, 2011 and, at that time, was found capable of sustained remunerative employment at the sedentary level "well after the November 17, 2010 report of Dr. Stambough." (Commission's Memo Contra at 10.) We agree and note as well that the June 10, 2011 finding was after the November 9, 2010 Interventional Pain Specialists' report. Furthermore, we note the SHO clearly indicated that he had reviewed and relied on the June 10, 2011 SHO order which included consideration of Drs. Watson and Manges' reports. Accordingly, we overrule the first and second objections.

{¶ 11} Upon review of the magistrate's decision, an independent review of the record, and due consideration of relator's objections, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule the first, second, and third objections to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, the requested writ of mandamus is hereby denied.

*Objections overruled;*
*writ of mandamus denied.*

LUPER SCHUSTER and BRUNNER, JJ., concur.

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Mark Bergen, | : | |
| Relator, | : | |
| v. | : | No. 15AP-923 |
| Northgate Masonry, Inc. and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

## MAGISTRATE'S DECISION

### Rendered on May 20, 2016

*Barron Peck Bennie & Schlemmer, LPA,* and *Mark L. Newman,* for relator.

*Michael DeWine,* Attorney General, and *Amanda B. Brown,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 12} Relator, Mark Bergen, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to that compensation.

Findings of Fact:

{¶ 13} 1. Relator sustained a work-related injury on March 13, 2000 when he suffered significant injuries to his back while employed as a brick mason.

{¶ 14} 2. Relator was 30 years of age when he was injured and has undergone numerous surgical procedures.

{¶ 15} 3. Relator filed his first application for PTD compensation on January 3, 2011. At that time, his claim was allowed for the following conditions:

> Sprain lumbar region; herniated disc L3-L4; aggravation of pre-existing degenerative disc L4-5; aggravation of pre-existing degenerative disc L3-4; depressive disorder; postlaminectomy syndrome-lumbar.

{¶ 16} 4. According to the statement of facts prepared at the time he filed his second application for PTD compensation, relator last worked in April 2004.

{¶ 17} 5. Relator's first application for PTD compensation was heard before a staff hearing officer ("SHO") on June 1, 2011. The SHO determined that relator retained the functional capacity to perform sedentary employment, found that his age of 41 years and his high school education were positive vocational factors, and his work history was neither a positive or negative vocational asset.

{¶ 18} The SHO discussed relator's attempts at vocational rehabilitation, stating:

> The Staff Hearing Officer finds that the Injured Worker has attempted vocational rehabilitation only one time since 2006. A rehabilitation closure letter dated 10/20/2010 indicates that the Injured Worker's most recent attempt at vocational rehabilitation was terminated for the reason that the Injured Worker did not feel he was able to participate at this time.
>
> Significantly, the Staff Hearing Officer finds that the Injured Worker's vocational rehabilitation file was not closed due to medical non-feasibility. The Staff Hearing Officer finds that there is no medical opinion on file indicating that a physician deemed the Injured Worker incapable of participating in vocational rehabilitation in 2010.
>
> Rather, the report of Dr. Freeman dated 09/08/2010 indicates that the Injured Worker would be a candidate for vocational rehabilitation and job retraining.

> Further, the Injured Worker testified at hearing that he would be interested in pursuing job retraining.
>
> Pursuant to State ex rel. Cunningham v. Industrial Commission (2001) 91 Ohio St.3d 261, the Commission may, when considering an Application for Permanent and Total Disability Compensation, consider not only past employment skills, but also those which may reasonably be developed. Therefore, the Industrial Commission may consider the Injured Worker's lack of effort to pursue new job skills which may have enhanced his ability to return to work.
>
> The Staff Hearing Officer finds the Injured Worker's failure to pursue new job skills particularly significant in light of the fact that the Injured Worker is only 41 years old.
>
> Based upon these facts, the Staff Hearing Officer finds that the Injured Worker has the vocational ability, education, intellect and literacy ability to perform sedentary employment.

{¶ 19} 6. Following a March 5, 2012 hearing before a district hearing officer ("DHO"), relator's workers' compensation claim was additionally allowed for the following back condition: "spondylolisthesis degeneration L4-S1."

{¶ 20} 7. Relator was referred for vocational rehabilitation on July 31, 2012. The managed care organization's ("MCO") vocational rehabilitation screening tool described relator's prior contact with vocational rehabilitation services as follows:

> Closure on 11-09-06 as the IW saw his doctor and all therapy was suspended. It was also recommended that he see a neurosurgeon and neurologist. Closure on 10-20-10 as the IW doesn't feel able to participate.

{¶ 21} 8. The MCO's initial feasibility determination was that relator was not feasible for vocational rehabilitation.

{¶ 22} 9. In a notation dated September 18, 2012, relator was found not eligible for vocational rehabilitation services because there were no documented restrictions from his physician of record within the past 180 days. Specifically, the closure note indicates:

> Based upon the current information this IW is not eligible at this time. A review of the claim indicates he is not receiving TTD, NWWL, Permanent Total Compensation, Loss of Use Award, or Permanent Partial Impairment Award in this

claim. Although MMI, there are no documented restrictions within the past 180 days. Nor is he a Catastrophic Injury, a Job Retention referral, or employed by a state agency or university at the time of injury. Response sent to MCO via email, voc screen updated with the referral information and the notification letter was generated to all parties.

{¶ 23} 10. To the extent that relator challenged the determination that he was not eligible for rehabilitation services because there were no updated medical restrictions on file, the administrator of the Ohio Bureau of Workers' Compensation ("BWC") affirmed the initial determination.

{¶ 24} 11. Relator's appeal was heard before a DHO on December 6, 2012. The DHO affirmed the order of the administrator and found that relator did not meet his burden of proving that he was eligible for vocational rehabilitation services because he failed to present sufficient persuasive evidence of his documented job restrictions. Specifically, the DHO order provides:

> It is the order of the District Hearing Officer that the Injured Worker's request for vocational rehabilitation services is denied.
>
> The District Hearing Officer finds that the Injured Worker has not met his burden of proving by a preponderance of the evidence that he is eligible for vocational rehabilitation services in this claim at this time.
>
> The District Hearing Officer finds that the Injured Worker has not fully complied with the eligibility requirements pursuant to Ohio Administrative Code 4123-18-03(C). Specifically, the District Hearing Officer finds that the Injured Worker has not presented sufficient persuasive evidence establishing that the Injured Worker has documented job restrictions relating to the allowed conditions in this claim from his physician of record dated not more than 180 days from the date of referral for vocational rehabilitation services.
>
> Therefore, it is the order of the District Hearing Officer that the Injured Worker's request for vocational rehabilitation services is denied.
>
> This decision is based on Ohio Administrative Code 4123-18-03.

{¶ 25} 12. Relator filed his second application for PTD compensation on November 18, 2014. At the time, relator was 45 years of age and noted that he began receiving Social Security retirement in the amount of $1,100 per month beginning in 2005. According to his application, relator graduated from high school in 1987 and was able to read, write, and perform basic math. Relator indicated that he was not interested in pursuing any further vocational rehabilitation.

{¶ 26} 13. In support of his application, relator submitted the November 6, 2014 report of George W. Lester, Psy.D., who had been treating relator for his allowed psychological condition. Dr. Lester opined that relator's allowed psychological condition prevented him from working, stating:

> Mr. Bergen has not been doing well and at this point I do not see any likelihood of substantial improvement. He has been working closely with his pain management physician. We have tried everything that is reasonably possible in terms of dealing with his depression problems. His depression appears to be clearly related to his pain level. At this point, with some reluctance, I have to admit that Mr. Bergen is unlikely to improve. He has reached a level which would meet the definition of permanent and total disability under Ohio's Workers' Compensation law. Though he has a high school degree and is of average intelligence his work has consisted of working as a brick layer. His depression symptoms would significantly impair his functioning. Subsequently, I support his request to file for permanent total disability.

{¶ 27} 14. Relator was examined by Debjani Sinha, Ph.D., on January 2, 2015. Dr. Sinha identified the allowed conditions in relator's claim, reviewed his medical history, identified the records which he reviewed and ultimately determined that relator had a Class 2 mild impairment with regard to his activities of daily living, concentration, persistence and pace, and a Class 3 moderate impairment with regard to social functioning and adaptation. Ultimately, Dr. Sinha opined that relator had a 17 percent whole person impairment and that he could perform part-time (3 to 4 hours of work 4 to 5 days a week) provided he have minimal contact with the public. Dr. Sinha did note that substantial new learning was not recommended due to relator's memory weaknesses, but his ability to utilize intact attention-concentration skill should be considered.

{¶ 28} 15. James T. Lutz, M.D., examined relator for his allowed physical conditions. In his December 29, 2014 report, Dr. Lutz opined that relator was incapable of performing work activities.

{¶ 29} 16. Relator's second application for PTD compensation was heard before an SHO on March 18, 2015. The SHO denied relator's application after finding that relator had voluntarily removed himself from the workplace. The SHO specifically noted that, concerning vocational rehabilitation, relator had failed to comply with Ohio Adm.Code 4123-18-03(C) because he did not present evidence of job restrictions related to the allowed conditions, which were not more than 180 days removed from the date of the referral for rehabilitation services. The SHO specifically quoted from the June 1, 2011 SHO order wherein the same finding was made. Specifically, the SHO's denial of PTD compensation was explained as follows:

> After full consideration of the issue, it is the order of this Staff Hearing Officer that the Application for Compensation for Permanent Total Disability filed 11/18/2014, is DENIED.
>
> This Staff Hearing Officer finds that under Ohio Adm.Code 4121-3-34(D) Guidelines for adjudication for applications of permanent total disability (d) states if, after hearing, the Adjudicator finds that the Injured Worker voluntarily removed himself from the work force, the Injured Worker shall be found not to be permanently and totally disabled. If evidence of a voluntary removal is brought into issue, the Adjudicator shall consider evidence that is submitted of the Injured Worker's medical condition at or near the time of the removal.
>
> This Staff Hearing Officer finds by way of history in this claim that an earlier Permanent Total Disability Application was filed on 01/03/2011. The Staff Hearing Officer finds that the Industrial Commission in an order issued 06/10/2011 [sic], found that the Injured Worker was not permanently and totally disabled. The order in pertinent part opined "The Staff Hearing Officer finds that the Injured Worker's vocational rehabilitation file was not closed due to the medical non-feasibility. The Staff Hearing Officer finds there is no medical opinion on file indicating that a physician deemed the Injured Worker incapable of participating in vocational rehabilitation in 2010. Rather, the report of Andrew Freeman, M.D., dated 09/08/2010, indicated that

the Injured Worker would be a candidate for vocational rehabilitation and job training."

This Staff Hearing Officer notes that the Industrial Commission order issued 06/10/2011 [sic], made the further finding "that the Injured Worker has the vocational ability, education, intellect and literacy ability to perform sedentary employment." Additionally, the Industrial Commission order found the "Injured Worker's failure to pursue new job skills particularly significant in light of the fact that the Injured Worker is only 41 years old" at the time of the hearing on 06/01/2011.

This Staff Hearing Officer, at the hearing on 03/18/2015, notes that since the denial of permanent total disability an additional condition (spondylolisthesis degeneration at L5-S1) [sic] was additionally added to the claim but that multiple low back conditions were already allowed in the claim and the course of medical treatment did not change. The Staff Hearing Officer finds that since the denial of permanent total disability there has been no further surgery and no other payment of temporary total disability compensation.

This Staff Hearing Officer finds that the Injured Worker voluntarily removed himself from employment. The Staff Hearing Officer finds that the Injured Worker stated at the hearing that that he has not looked for employment at any time after 2011. The Staff Hearing Officer notes that it was represented that the Injured Worker has been on Social Security Disability since 2005. The Staff Hearing Officer finds that the Industrial Commission order issued 06/10/2011 [sic] specifically found that the Injured Worker had the vocational ability, education, intellect and literacy ability to perform sedentary employment. This Staff Hearing Officer finds there is a lack of any indication that the Injured Worker sought additional employment, specifically of sedentary employment. Therefore, under Ohio Adm.Code 4121-3-34(D)(d) [sic] the Staff Hearing Officer finds that the Injured Worker voluntarily removed himself from the work force and thus he shall not be found to be permanently and totally disabled. Therefore, the Injured Worker's Application for Permanent Total Disability filed 11/18/2014, is DENIED.

This order is based on Ohio Adm.Code 4121-3-34, the Industrial Commission Order issued 06/10/2011 [sic], Industrial Commission order issued 12/11/2012 [sic] and the

reasoning as stated above. The Staff Hearing Officer notes that an Industrial Commission order issued 12/11/2012 [sic] indicated that the Injured Worker is not eligible for vocational rehabilitation services at this time as he has not fully complied with the eligibility requirements pursuant to Ohio Adm.Code 4123-18-03(C). The Staff Hearing Officer notes the order specified that the Injured Worker did not present sufficient persuasive evidence establishing that the Injured Worker has documented job restrictions relating to the allowed conditions in the claim from his physician of record dated not more than 180 days from the date of the Referral for Vocational Rehabilitation Services. The Staff Hearing Officer notes that no Appeal was taken to this Industrial Commission order issued 12/11/2012 [sic].

(Emphasis sic.)

{¶ 30} 17. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 31} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 32} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 33} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied on and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 34} In his brief, relator asserts that the medical evidence clearly demonstrates that he has been unable to work due to his low back injury, the severe conditions allowed in his claim, and the multiple surgeries he has undergone. Relator argues that the commission "did not consider all the evidence of Relator's medical condition when he was found [maximum medical improvement ("MMI")] and left the workforce in November 2010." (Relator's Brief, 8.)

{¶ 35} It is undisputed that relator's injuries and the allowed conditions in his claim are significant. Relator underwent an L4-5 anterior fusion in 2000, an L3-5 fusion in 2004, and in 2005, the L3-4 and L4-5 levels were repaired. Relator had a spinal chord stimulator placed in 2007 and removed in 2008. Further, relator had a pain pump implant placed in October 2009 and has participated in pain management.

{¶ 36} However, although relator indicates in his brief that he left the workforce in 2010, according to his application for PTD compensation and the statement of facts prepared prior to the hearing, he last worked in 2004, four years after his injury. Relator has included copies of the operative reports; however, he has not presented medical notes or other medical reports from his treating physicians indicating his physical capabilities between 2004 and 2014 when he filed his second application for PTD compensation. The record does include pages one, two, and five of the independent medical evaluation prepared by Andrew Freeman, M.D., dated September 8, 2010. Dr. Freeman opined that relator could occasionally lift/carry up to 10 pounds, occasionally stand/walk (4 to 6 hours) and frequently sit (6 to 12 hours). Dr. Freeman opined that these restrictions were

permanent and that relator could work 8 hours a day for 5 days a week. This report from Dr. Freeman predates the October 20, 2010 rehabilitation closure letter, which was cited by the SHO in denying relator's first PTD application in 2011. As noted in the findings of fact, the SHO found that relator's vocational rehabilitation file was not closed in 2010 due to medical non-feasibility but because relator had failed to submit medical evidence that he was incapable of participating in vocational rehabilitation. Further, the SHO cited the report of Dr. Freeman noting that it indicated that relator would be a candidate for vocational rehabilitation and job training.

{¶ 37} As indicated in the findings of fact, relator was screened for vocational rehabilitation again in July 2012. His file was closed on September 18, 2012 based on a finding that he was not eligible for services at this time because there were no documented restrictions within the past 180 days.

{¶ 38} Ohio Adm.Code 4123-18-03 provides guidelines for referral to an acceptance into vocational rehabilitation. In order to be eligible for vocational rehabilitation services, the injured worker must have reached MMI, must not currently be receiving compensation, and must have job restrictions in the claim documented by the physician of record dated not more than 180 days prior to the date of referral. *See* Ohio Adm.Code 4123-18-03(C)(3)(d).

{¶ 39} Ohio Adm.Code 4121-3-34 provides guidelines for the determination of applications for PTD compensation. Ohio Adm.Code 4121-3-34(D)(1)(d), specifically provides:

> (D) Guidelines for adjudication of applications for permanent total disability The following guidelines shall be followed by the adjudicator in the sequential evaluation of applications for permanent total disability compensation:
>
> (1) * * *
>
> (d) If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself or herself from the work force, the injured worker shall be found not to be permanently and totally disabled. If evidence of voluntary removal or retirement is brought into issue, the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement.

{¶ 40} Relator last worked in 2004 and has undergone numerous surgical procedures. However, in September 2010, an independent medical evaluation by Dr. Freeman indicated that relator was capable of performing at least sedentary employment. Although relator was evaluated for vocational rehabilitation services, his rehabilitation file was closed in 2010 because he did not feel he was able to participate in such services. This does not constitute medical instability.

{¶ 41} In June 2011, relator's first application for PTD compensation was denied based on the finding that he was capable of performing sedentary work. Medical evidence showed he was not only capable of work, he was also considered a good candidate for vocational rehabilitation. Although, relator specifically indicated an interest in participating, he waited until July 2012 before he pursued any further vocational rehabilitation.

{¶ 42} When he was referred again in 2012, relator failed to present medical evidence of his restrictions which were based on an examination within 180 days as required. Although relator argues that he did not voluntarily abandon the entire workforce, it is clear that, despite medical evidence that he was physically able to participate in vocational rehabilitation services, relator did not do so. Further, when relator was referred, he then failed to provide medical evidence of restrictions so that he could be properly evaluated for vocational rehabilitation services in 2012.

{¶ 43} At oral argument, counsel asserted that relator's treating physician, Jeffrey Stambough, M.D., opined that he was unable to work. A review of the stipulation of evidence reveals three operative reports from Dr. Stambough (November 30, 2000, June 28, 2005, and November 20, 2008) but no reports. Even now, relator fails to present any medical evidence contemporaneous with the time he was referred for vocational rehabilitation and/or following the denial of his first application for PTD compensation that would support a finding that he was medically unable to pursue vocational rehabilitation or work. To the extent that relator asserts the SHO failed to consider whether he was medically able to work, he failed to present any evidence.

{¶ 44} There is some evidence in the record on which the commission could rely to find that relator had not attempted vocational rehabilitation which could have improved his chances of either being re-employed or having the determination made that he was

unable to work.   Because it was relator's voluntary action of not providing medical restrictions from his treating physician, he evidenced a lack of intention to participate and/or return to work.   As such, it was not an abuse of discretion for the commission to find that relator had failed to avail himself of vocational rehabilitation services which could have returned him to employment and, as such, had voluntarily left the workforce.

{¶ 45} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion when it denied his application for PTD compensation, and this court should deny his request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).