[Cite as *State ex rel. Heinen's, Inc. v. Indus. Comm.*, 2019-Ohio-4690.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Heinen's, Inc., | : | |
| Relator, | : | |
| v. | : | No. 18AP-635 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on November 14, 2019

*Battle & Polly LLC, Steven C. Polly,* and *Steven R. Yoo,* for relator.

*Dave Yost,* Attorney General, and *Sherry M. Phillips,* for respondent Industrial Commission of Ohio.

*Nager, Romaine & Schneiberg, L.P.A., Jerald A. Schneiberg,* and *C. Bradley Howenstein,* for respondent Harry Strachan.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

NELSON, J.

{¶ 1} Relator Heinen's, Inc. is absolutely correct that an employee's "failure to participate in vocational rehabilitation can constitute voluntary abandonment of the workforce" for disability compensation purposes. Relator's Objection to Magistrate's Decision at 14, citing *State ex rel. Bergen v. Northgate Masonry, Inc.*, 10th Dist. No. 15AP-923, 2016-Ohio-7705 (upholding magistrate's determination at ¶ 43-44 that the Industrial Commission of Ohio had "some evidence" on which to find that claimant there had failed to provide medical evidence that he was unable to work or to undertake vocational rehabilitation that could have improved his chances for reemployment). But the bare fact that a claimant has declined vocational rehabilitation services does not categorically

preclude the Industrial Commission of Ohio ("commission") from determining on appropriate evidence that vocational rehabilitation efforts are obviated because the claimant is permanently totally disabled in any event. Finding that to be a fair reading of what happened here, we are constrained to overrule Heinen's single objection to the magistrate's decision and to deny the writ of mandamus that Heinen's seeks.

{¶ 2} Heinen's brought this original action asking to have this court order the commission to reverse its grant of claimant Harry Strachan's application for permanent total disability benefits. Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred the matter to a magistrate, who on April 25, 2019 issued her decision, including findings of fact and conclusions of law, recommending against the writ. Heinen's objects to that decision, positing that: "The Magistrate's decision, which affirms the prior ruling from the Industrial Commission, constitutes a gross misinterpretation of the affirmative defenses set forth in ORC 4123.58(D) and an abuse of discretion." Relator's Objection at 3. We do not review the magistrate's decision for abuse of discretion; rather, Civ.R. 53 (D)(4)(d) directs us to "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Having undertaken that review, we reach the same result.

{¶ 3} The magistrate's decision outlines the essential facts of this matter, and Heinen's does not call into question that recitation; we adopt those findings of fact as our own. In a nutshell, Mr. Strachan sustained work-related injuries at the Heinen's grocery store where he had been working part-time to supplement the social security disability income ("SSDI") he received in connection with his rheumatoid arthritis. His treatments over the course of time included three left shoulder surgeries and various surgeries on both thumbs, including tendon transplants in each. His worker's compensation claim was allowed for various conditions. Eventually referred to vocational rehabilitation, he declined to participate after expressing concerns that the accompanying living maintenance benefit could imperil his SSDI eligibility.

{¶ 4} When Mr. Strachan applied for permanent total disability compensation, he submitted evidence from a doctor and from a certified occupational consultant that his injuries precluded any sustained remunerative employment. As the magistrate noted, the record regarding that application "also contained medical evidence from physicians who

opined that claimant was not permanently and totally disabled." *See* App'x at ¶ 25-28 (detailing competing medical assessments).

{¶ 5} A commission staff hearing officer denied Mr. Strachan's permanent total disability claim, finding that his "lack of participation in vocational rehabilitation for reasons unrelated to the allowed conditions in the claim constitutes a voluntary abandonment of the workforce, and therefore, injured Worker [Strachan] is not eligible for permanent total disability." March 1, 2018 SHO Decision at 2.

{¶ 6} On Mr. Strachan's request for reconsideration, the commission found sufficient evidence to warrant adjudication of his allegation that the staff hearing officer had erred in finding ineligibility based solely on a failure to engage in vocational rehabilitation that would be irrelevant to his employability. April 2, 2018 Commission Interlocutory Order. The commission then determined that Mr. Strachan met his burden of proving that the staff hearing officer had made a clear mistake of law "by equating the Injured Worker's failure to participate in vocational rehabilitation to a voluntary abandonment of the workforce." May 10, 2018 commission ruling at 1. The commission therefore exercised its continuing jurisdiction, and concluded that Mr. Strachan "is permanently and totally disabled from a physical impairment standpoint alone, thus obviating the need for a vocational analysis." *Id.* at 2. The commission specified that in reaching that determination, it relied on the reports of Dr. David Copp (chiropractic physician and certified occupational consultant) and Dr. Sheldon Kaffen (an orthopedist). *Id.* The commission acknowledged and rejected Heinen's voluntary abandonment argument, observing that a failure to engage in vocational rehabilitation does not automatically and necessarily ("axiomatically") trigger ineligibility through workforce abandonment (where such rehabilitation is "obviate[d]" by the physical impairment). *Id.* It granted Mr. Strachan's application for permanent total disability. *Id.* at 1.

{¶ 7} Objecting to the magistrate's decision that upholds the commission's determinations, Heinen's recites a number of legal principles and then "[m]ore importantly" invokes our decision in *Bergen* as controlling the result here. Relator's Objection at 12. We tend to agree with the statements of basic law, but find that *Bergen* is entirely consistent with the commission's outcome in this case.

{¶ 8} Heinen's is correct, for example, that " '[a]n award of permanent total disability compensation should be reserved for the most severely disabled workers and should be allowed only when there is no possibility for re-employment.' " Relator's Objection at 8, quoting *State ex rel. B.F. Goodrich Co. v. Indus. Comm.*, 73 Ohio St.3d 525, 529 (1995) (ordering consideration of retraining where commission impliedly "found claimant medically capable of some work" and "said only that claimant's present skills would not transfer," *id.* at 528, 530); *see also State ex rel. Wilson v. Indus. Comm.*, 80 Ohio St.3d 250, 254 (1997) (failure to engage in vocational rehabilitation will not "go unscrutinized"; affirming judgment upholding commission finding of "reemployment potential" and consequent rejection of claimant's view "that he is incapable of sustained remunerative employment," *id.* at 253).

{¶ 9} Heinen's also is correct that statute provides that permanent total disability shall not be compensated where an employee has "voluntarily abandoned the workforce" and/or "has not engaged in educational or rehabilitative efforts to enhance the employee's employability, unless such efforts are determined to be in vain." Relator's Objection at 8-10, citing R.C. 4123.58(D)(3) and (4) and Ohio Adm.Code 4121-3-34(D)(1)(d). Heinen's is correct, too, that voluntary abandonment and failure to undertake vocational rehabilitation where warranted "can be relied upon individually or in combination." Relator's Objection at 12 (emphasis omitted).

{¶ 10} Heinen's is correct, moreover, that "the question of whether a claimant has voluntarily retired or has voluntarily abandoned the workforce is a question of fact for the Commission to determine." *Id.* at 10, citing *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245.

{¶ 11} In part for that reason, however, Heinen's is not right that *Bergen* undermines the commission's conclusion here. There, as Heinen's observes, the magistrate's decision as adopted found " 'some evidence' " in support of the commission's determination that vocational rehabilitation could have returned the claimant to employment. Relator's Objection at 13, quoting magistrate's decision in ¶ 44 from *Bergen*. Here, by contrast, the commission pointed to evidence that Mr. Strachan's "physical state causes him to be permanently totally disabled," that he "cannot obtain gainful employment," and that he "is unable to engage in any work activities secondary to the

injuries," all of which evidence the commission used "to conclude the Injured Worker is permanently and totally disabled from a physical impairment standpoint alone, thus obviating the need for a vocational analysis." May 10, 2018 commission ruling at 2, citing to reports of Drs. Copp and Kaffen.

{¶ 12} That is entirely different from the situation in *Bergen* where the magistrate found that the claimant " 'failed to present any evidence' " to support his contention that he was medically unable to work. 2016-Ohio-7705 at ¶ 4. It is, however, like *State ex rel. Tradesman Internatl. v. Indus. Comm.*, 10th Dist. No. 13AP-122, 2014-Ohio-1064, ¶ 18, where we noted that "medical evidence indicated that claimant was PTD based solely on the allowed medical conditions * * * * [, and] [a]ccordingly, a consideration of the nonmedical factors, including whether claimant had or should have pursued vocational rehabilitation, was unnecessary."

{¶ 13} Heinen's takes much the same approach that the commission attributed to its staff hearing officer in urging that Mr. Strachan's rejection of vocational rehabilitation "for reasons not related to his claim" necessarily "constituted a voluntary abandonment of the workforce" requiring rejection of his disability application. Objections at 14. The commission counters that such a failure to participate need not give rise to "automatic" benefits ineligibility, and that given the particular medical evidence here that Mr. Strachan is incapable of sustained remunerative employment, it was a mistake of law for the hearing officer to believe that his "failure to participate in vocational rehabilitation absolutely precluded eligibility for PTD compensation." Memorandum of Respondent, Industrial Commission of Ohio, Contra to Objections of Relator, at 9, 10 (also noting that statute does not make such failure a bar to benefits where rehabilitative efforts are found to be "in vain"). Again we conclude that "[w]here, as here, medical factors alone preclude sustained remunerative employment, there is no practical purpose for the commission to consider nonmedical factors" such as vocational rehabilitation. *Tradesman Internatl.*, 2014-Ohio-1064 at ¶ 18.

{¶ 14} Here the medical evidence on which the commission relied reflected that "Mr. Strachan is permanently and totally disabled and is unable to perform any sustained, remunerative employment due to his allowed conditions in this claim." Copp report at 3 (also noting at 2 that due to the work-related injuries and resulting surgeries, he "is unable

to do many of the normal activities of daily living," that "his hands are non-functional," and that he suffers other disabling problems). That evidence further indicated that "Mr. Strachan is unable to engage in any work activities secondary to the [work-related] injuries involving his left shoulder and both hands," and that he is prevented "from any use of his upper extremities." Kaffen report at 6.

{¶ 15} The burden of Heinen's argument is that "the Commission's action in this matter constitutes a gross abuse of discretion," Relator's Objection at 15, but "[t]his court will not determine that the commission abused its discretion when there is some evidence in the record to support the commission's finding." *Tradesman Internatl.,* 2014-Ohio-1064 at ¶ 10 (citing *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197, 198 (1986), and further explaining that this standard " 'reflects the established principle that the commission is in the best position to determine the weight and credibility of the evidence and disputed facts,' " quoting *State ex rel. Woolum v. Indus. Comm.*, 10th Dist. No. 02AP-780, 2003-Ohio-3336, ¶ 4).

{¶ 16} We find that there is some evidence in the record permitting the commission to determine that Mr. Strachan's medical problems were debilitating and ongoing from the time of the work injuries and related surgeries to an extent that his employment capabilities would not have benefitted from vocational rehabilitation, "thus obviating the need for a vocational analysis." *See* May 10, 2018 commission ruling.

{¶ 17} Finding the commission's determination to have been supported by some evidence, we overrule Heinen's abuse of discretion objection, adopt the magistrate's findings of fact and ultimate recommendation (for the reasons outlined above, if not precisely as delineated in her decision), and deny the request for a writ of mandamus.

*Objection overruled; writ denied.*

SADLER and BRUNNER, JJ., concur.

_____

# A P P E N D I X

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Heinen's Inc., | : | |
| Relator, | : | |
| v. | : | No. 18AP-635 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

## M A G I S T R A T E ' S   D E C I S I O N

Rendered on April 25, 2019

*Battle & Polly LLC, Steven C. Polly,* and *Steven R. Yoo,* for relator.

*Dave Yost,* Attorney General, and *Sherry M. Phillips,* for respondent Industrial Commission of Ohio.

*Nager, Romaine & Schneiberg, L.P.A., Jerald A. Schneiberg,* and *C. Bradley Howenstein,* for respondent Harry Strachan.

IN MANDAMUS

{¶ 18} Relator, Heinen's Inc., has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order wherein the commission exercised its continuing jurisdiction over the decision of its staff hearing officer ("SHO") from the January 31, 2018 hearing in which the SHO had denied permanent total disability ("PTD") compensation to respondent Harry Strachan ("claimant") after finding that claimant's failure to participate in vocational

rehabilitation precluded him from receiving PTD compensation. The commission found that the SHO's order contained a clear mistake of law by equating claimant's failure to participate in vocational rehabilitation constituted a voluntary abandonment of the workforce and, thereafter, granted PTD compensation to claimant.

Findings of Fact:

{¶ 19} 1. Claimant sustained a work-related injury on May 5, 2009 and his workers' compensation claim was allowed for the following conditions:

> Left shoulder dislocation; left thumb fracture; major depressive disorder, single episode, mild; loss of use of the right thumb; left shoulder rotator cuff tear; rupture extensor tendon bilateral thumb; non traumatic rupture of the extensor indicis proprius (EIP) tendon left index finger and transfer to left thumb.

{¶ 20} 2. At the time of his injury, claimant was employed at relator's grocery store in various positions. He was working in a part-time capacity to supplement his Social Security Disability income which he had been receiving for a number of years due to rheumatoid arthritis.

{¶ 21} 3. As of December 26, 2013, claimant was granted a 100 percent loss of use of his left thumb.

{¶ 22} 4. Following his injury, claimant has undergone several surgeries to his shoulder, as well as his right and left thumbs. Claimant still has aching and throbbing pain in his shoulder, cannot lie on his left shoulder, and can lift no more than a half-gallon of milk. His thumb surgeries have left him with permanent locking of both thumbs and extension, and only some ability to move his right thumb by physically separating the joints. He cannot use his left hand at all and cannot grasp items with his right hand.

{¶ 23} 5. After claimant's allowed conditions reached maximum medical improvement ("MMI"), he was referred for vocational rehabilitation services.

{¶ 24} 6. Vocational Specialist Deborah Lee prepared a vocational evaluation report dated January 14, 2015. Lee indicated that claimant was eager to return to work. She also noted that claimant had been receiving Social Security Disability income for a number of years and wanted to find part-time work to supplement this income as he had done in the past. Lee concluded that claimant was a good candidate for vocational rehabilitation services because of his "high level of motivation to return to employment, his openness to

considering a wide range of options, and his strong customer service/communication skills." She noted further that claimant would benefit from vocational rehabilitation assistance because he may require a job that is either developed for him or that can accommodate his limitations. She noted the following limitations:

> Mr. Strachan participated in a Functional Capacity Evaluation performed at MetroHealth Medical Center on 12/1/2014. The results of the evaluation place Mr. Strachan at the [s]edentary level of physical exertion for work activity. There was a recommendation to alternate his sitting position every 90 minutes for about 5 minutes and that standing should not exceed 5 minutes with a 10 minute change of position before resuming standing. Walking is not to exceed 3 minutes in succession with a 10 minute change of activity before resuming walking.
>
> Mr. Strachan has additional significant restrictions which include bilateral reaching and handling not to exceed Occasional (1/3 to 2/3 of day) with no fingering. His thumb function, according to the FCE remains quite limited. Testing reflected that he was unable to perform 'pinch' activities due to the inability to perform thumb opposition. He could not use tools.

{¶ 25} 7. Claimant's vocational rehabilitation file was closed as of April 8, 2015. Although it was noted that claimant's treating physician Dr. Hochman had completed an updated Medco-14 dated January 14, 2015, that record is not contained in the stipulation of evidence for review. The initial vocational rehabilitation plan consisted of six weeks of computer/clerical work adjustment services that would permit claimant to redevelop a regular work routine, update his computer skills, as well as try different types of adaptive keyboards, mouse, and other adaptive computer equipment. Thereafter, an additional six weeks of computer/clerical work adjustment followed by three weeks of job seeking skills training and a job search was anticipated. The closure report indicates:

> [Claimant] was anxious/excited to participate in services. However, when it was noted that his weekly LM rate would be the state minimum of $431.00 per week, he was concerned about losing his eligibility for SSDI benefits. Mr. Strachan followed up with his AOR and then made 3 separate phone calls to SSDI and spoke to 3 different individuals who all told him that if he was to get LM at that rate, he would [lose] his SSDI benefits permanently. Given this information,

[claimant] indicated that he did not want to chance losing his benefits and will therefore, not participate in VR services. Therefore, his VR file is being closed.

{¶ 26} 8. Thereafter, claimant filed his application for PTD compensation. Claimant submitted medical evidence from physicians who opined that he was not able to perform physical work activities because of the limitations occasioned by the injury to his left shoulder and both hands. (See the May 18, 2017 report of David Copp, certified occupational consultant and the November 13, 2017 report of Sheldon Kaffen, M.D.) Claimant also submitted the May 8, 2017 report of Donald Jay Weinstein, Ph.D., who opined that claimant was permanently and totally disabled as a result of the allowed psychological condition alone.

{¶ 27} 9. The record also contained medical evidence from physicians who opined that claimant was not permanently and totally disabled. Specifically, in his August 29, 2017 report, Scott E. Singer, M.D., opined it was claimant's underlying rheumatoid arthritis which rendered him unable to perform sustained remunerative employment. Specifically, Dr. Singer stated:

> He was 5 feet 7 inches tall and he weighed 149 pounds. A general survey of his left shoulder girdle revealed it to be higher than the right. Generalized muscle atrophy was noted. Active range of motion about his glenohumeral joint was significantly limited in all planes. He carried out flexion to 60°, abduction to 60°, adduction to 20° and extension to 10°. Strength was 4-/5 on resisted internal and external rotation. Apprehension sign was positive.
>
> A survey of his hands revealed extensive, generalized, degenerative deformities as well as intrinsic muscle atrophy, bilaterally. Both thumbs were fixed in opposition to his palms and he had essentially no functional range of motion of any of the joints in either palms. He also had limited range of motion about the other digits in both hands, but was able to bring the pulps of the 3rd and 4th and 5th digits to the palms in both hands.
>
> * * *
>
> Although the claimant has significant functional limitations, in both of his hands and thumbs, which would preclude his ability to perform sustained remunerative activities of any

kind, his condition, in that regard, is principally related to his underlying rheumatoid arthritis, which is not recognized in this claim in any context. Based solely upon the thumb conditions recognized in this claim, it would be reasonable to expect the claimant to have much greater functional capabilities with both hands if it were not for his underlying degenerative arthritic condition. As such, based solely upon the conditions recognized in this claim, the current medical evidence indicates that the claimant is not permanently and totally disabled.

{¶ 28} Dr. Singer opined claimant could perform light-duty work provided there was no forceful grasping with either hand and that claimant not perform work above shoulder level with his left arm or work with his left arm extended away from his body.

{¶ 29} 10. From a psychological standpoint, Loren Shapiro, Ph.D., authored a report dated October 27, 2017 wherein he opined:

[A] good portion of the [Injured Worker's] depression resulted from the loss of his life partner. This pain was still so active the [Injured Worker] chose to wear at least one item of his partner's clothing daily. The [Injured Worker] even noted that his life would be much better at the present time if his partner was still alive. * * * Clearly, the [Injured Worker] still had healthy thoughts and drives but his physical functioning interfered with carrying these out. The [Injured Worker] noted he had to engage in a good bit of self-pushing to accomplish tasks. He noted though he was always able to do what he had to do. Clearly, the [Injured Worker] was experiencing a Depressive Disorder. This depression was fueled by his industrial injuries, as well as unrelated injuries. Understanding the multidimensional components to his Depressive Disorder was quite important for this examination.

{¶ 30} Ultimately, Dr. Shapiro concluded claimant was capable of work activities with limitations due to the allowed psychological condition. Claimant would require frequent breaks in a low stress position to help him have confidence on the job. Claimant would be able to engage in one or two-step tasks and function with a flexible work schedule.

{¶ 31} 11. The record also contains the August 28, 2017 psychological report of Steven G. Noffsinger, M.D., who determined claimant's major depressive disorder was in partial remission and would not be totally disabling.

{¶ 32} 12. Claimant's application was heard before an SHO on January 31, 2018 and resulted in an order finding that claimant was not entitled to PTD compensation. The SHO relied on medical reports to conclude that claimant was capable of performing sedentary work with the ability to use a computer with additional limitations including the inability to write and inability to lift greater than ten pounds. The SHO then reviewed the vocational evidence indicating that claimant was a good candidate for vocational rehabilitation services and noted that a viable vocational rehabilitation plan was developed, and that claimant's treating physicians provided the appropriate medical releases for his participation. The SHO then discussed the reasons why claimant's vocational file was closed and concluded that claimant's failure to go forward with the plan, for reasons unrelated to the claim, constituted a voluntary abandonment of the workforce. Specifically, the SHO order provides:

> The Staff Hearing Officer finds that the vocational rehabilitation file was then closed as of 04/08/2015, as Injured Worker chose not to participate in services, as Injured Worker believed that the receipt of living maintenance benefits pursuant to the written plan would potentially jeopardize his eligibility for continued social security disability.
>
> The Staff Hearing Officer finds based upon the 04/08/2015 closure report and testimony at hearing, that the Injured Worker voluntarily declined vocational services for reasons unrelated to the allowed conditions in the claim.
>
> The Staff Hearing Officer finds that Injured Worker's failure to make reasonable efforts to enhance his rehabilitation or efforts toward re-employment inconsistent with R.C. 4123.58(D) rendering Injured Worker ineligible for permanent total disability.
>
> The Staff Hearing Officer finds Injured Worker's failure to participate in vocational rehabilitation and Injured Worker's minimal initiative for re-employment due to his belief he would be disqualified from continued receipt of social security disability, is not an extenuating circumstance or justification to excuse Injured Worker's participation.
>
> The Staff Hearing Officer finds permanent total disability compensation is compensation of last resort, to be awarded only when all reasonable avenues of accomplishing a return to

sustained remunerative employment have failed. *State ex rel. Wilson v. Industrial Commission,* 80 Ohio St.3d 250, 685 M.E.2d 774 (1997).

The Staff Hearing Officer, accordingly, finds Injured Worker's lack of participation in vocational rehabilitation for reasons unrelated to the allowed conditions in the claim constitutes a voluntary abandonment of the workforce, and therefore, Injured Worker is not eligible for permanent total disability.

{¶ 33} 13. Claimant filed a request for reconsideration on March 20, 2018.

{¶ 34} 14. In an interlocutory order mailed April 12, 2018, the commission concluded that claimant had presented sufficient evidence of a clear mistake of law. Specifically, the commission order provides:

It is the finding of the Commission the Injured Worker has presented evidence of sufficient probative value to warrant adjudication of the Request for Reconsideration regarding the alleged presence of a clear mistake of fact in the order from which reconsideration is sought, a clear mistake of law of such character that remedial action would clearly follow, and an error by the subordinate hearing officer, which renders the order defective.

Specifically, it is alleged the Staff Hearing Officer erred in finding the Injured Worker, who is now physically unable to engage in any sustained remunerative employment, voluntarily abandoned the workforce based solely upon his failure to participate in vocational rehabilitation to develop skills which are now irrelevant to his employability.

Based on these findings, the Commission directs the Injured Worker's Request for Reconsideration, filed 03/20/2018, be set for hearing to determine whether the alleged clear mistakes of fact and law and error by the subordinate hearing officer as noted herein are sufficient for the Commission to invoke its continuing jurisdiction.

{¶ 35} 15. A hearing was held before the commission on May 10, 2018. The commission initially determined that claimant had met his burden of proving a clear mistake of law, stating:

After further review and discussion, it is the decision of the Commission the Injured Worker has met his burden of proving the Staff Hearing Officer order, issued 03/03/2018,

contains a clear mistake of law of such character that remedial action would clearly follow. Specifically, the Staff Hearing Officer erred by equating the Injured Worker's failure to participate in vocational rehabilitation to a voluntary abandonment of the workforce. Therefore, the Commission exercises continuing jurisdiction pursuant to R.C. 4123.52 and *State ex rel. Nicholls v. Indus. Comm.,* 81 Ohio St.3d 454, 692 N.E.2d 188 (1998), *State ex rel. Foster v. Indus. Comm.,* 85 Ohio St.3d 320, 707 N.E.2d 1122 (1999), and *State ex. rel. Gobich v. Indus. Comm.,* 103 Ohio St.3d 585, 2004-Ohio-5990, 817 N.E.2d 398, in order to correct this error.

{¶ 36} 16. The commission relied on the medical reports of Drs. Copp and Kaffen to conclude that claimant was permanently and totally disabled solely as a result of the allowed physical and psychological conditions.

{¶ 37} Thereafter, the commission rejected relator's argument that claimant had voluntarily abandoned the workforce, stating:

Finally, the Commission acknowledges and rejects the Employer's argument that payment of permanent total disability benefits should be precluded based on a finding the Injured Worker voluntarily abandoned the workforce because he failed to participate in vocational rehabilitation. The Commission finds a failure to participate in vocational rehabilitation does not axiomatically imply an abandonment of the workforce nor is such a failure to participate "a lifestyle choice" as was also asserted by the Employer.

As noted earlier, the Injured Worker worked for more than three decades as a customer service worker in the automotive industry, all while suffering with the non-work related condition of rheumatoid arthritis, which eventually caused him to leave this work. The Injured Worker then re-entered the workforce a short time later with the instant Employer despite his arthritis and was successful in his position there until the industrial injury, which is the subject of this clam. Only after that injury was the Injured Worker unable to remain in the workforce.

The Commission finds these circumstances to be inherently inconsistent with a finding of voluntary abandonment.

{¶ 38} 17. Thereafter, relator filed the instant mandamus action in this court asserting that the commission's exercise of continuing jurisdiction constituted an abuse of

discretion and that the commission's decision to award claimant PTD compensation despite his failure to participate in vocational rehabilitation services also constitutes an abuse of discretion.

Conclusions of Law:

{¶ 39} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 40} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 41} In denying claimant PTD compensation, the SHO specifically found that claimant "chose not to participate in [vocational rehabilitation] services" because he "believed that the receipt of living maintenance benefits * * * would potentially jeopardize his eligibility for continued social security disability." The SHO concluded that claimant's "minimal initiative for re-employment due to his belief he would be disqualified from continued receipt of social security disability, is not an extenuating circumstance or justification to excuse" his participation in vocational rehabilitation services.

{¶ 42} Although relator argues the SHO did not automatically equate claimant's failure to participate in vocational rehabilitation as a voluntary abandonment of employment, the magistrate disagrees. So did the commission when it exercised continuing jurisdiction based on a clear mistake of law: "the [SHO] erred by equating the

Injured Worker's failure to participate in vocational rehabilitation to a voluntary abandonment of the workforce."

{¶ 43} R.C. 4123.58(D)(4) does provide that PTD compensation shall not be paid when the reason the injured worker cannot perform sustained remunerative employment is due to the injured worker's failure to engage in educational or rehabilitative efforts to enhance their employability unless such efforts would be in vain.

{¶ 44} In 2015, relator was 61 years of age and had worked in the customer service industry for approximately 30 years. He had been diagnosed with rheumatoid arthritis when he was in his 20's and had been receiving social security disability for that condition since 2006, when he was 53 years old. He had been working part-time for relator to supplement his social security disability since 2007. When he fell in 2009, he injured both his hands—hands that were already affected by rheumatoid arthritis.

{¶ 45} The question of abandonment is primarily a question of intent and all relevant circumstances existing at the time of the alleged abandonment should be considered. *See State ex rel. Diversitech Gen. Plastic Film Div. v. Indus. Comm.*, 45 Ohio St.3d 381 (1989). Here, the SHO failed to do so and the commission, thereafter, exercised continuing jurisdiction.

{¶ 46} As the vocational evidence demonstrates, claimant wanted to return to part-time employment, not only to supplement his social security disability, but because he enjoyed working. To that end, he was ready, willing, and able to participate in vocational rehabilitation services. It was not until he learned he would lose his social security disability benefits because the amount of living maintenance to be paid would be too much that he declined those services. This cannot be characterized as a lifestyle choice—he had been receiving those benefits since 2006 and working part-time since 2007. Although the SHO repeatedly indicated claimant "believed" he would lose these benefits, the only evidence in the record is the notation in the closure report that claimant made three phone calls inquiring and his testimony that he would lose those benefits. Although, clearly, claimant's reason for not participating was based on something unrelated to the allowed conditions in his claim, it is a factor over which claimant had no control. The SHO did not consider all the relevant circumstances existing at the time and instead, focused exclusively on claimant's failure to participate. On this ground, the commission did not abuse its

discretion when it exercised continuing jurisdiction and ultimately awarded claimant PTD compensation.

{¶ 47} Based on the foregoing, it is this magistrate's decision that this court deny relator's request for a writ of mandamus.

                                        /S/ MAGISTRATE
                                        STEPHANIE BISCA

### NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).